# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MATTHEW E. DUMAS**
Hostetter & O'Hara
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE:

**JOHN B. DRUMMY**
**JAMES R. COHEE**
Kightlinger & Gray, LLP
Indianapolis, Indiana

FILED

Aug 01 2013, 8:49 am

*[signature]*

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LUXURY TOWNHOMES, | ) | |
| LLC/LP XXIV, LLC, et al., | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1210-MF-514 |
| | ) | |
| McKINLEY PROPERTIES, INC. | ) | |
| AND KENNETH POLSINELLI, | ) | |
| | ) | |
| Appellees-Non-Parties. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Michael D. Keele, Judge
Cause No. 49D07-1004-MF-15176

**August 1, 2013**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

This case arises from a foreclosure action and concerns about the court-appointed receiver's maintenance of the collateral during the proceedings. Plaintiff PNC Bank[1] ("PNC") filed foreclosure proceedings against Appellants-Defendants Luxury Townhomes, LLC and LP XXIV, LLC (collectively, "Luxury") after Luxury failed to make scheduled payments as set forth in the relevant mortgage documents. PNC requested that a receiver be appointed to oversee the collateral during the pendency of the foreclosure proceedings. The trial court subsequently appointed Appellee-Non-party Kenneth Polsinelli of McKinley Properties, Inc. ("McKinley") as receiver.

Luxury and PNC eventually settled and jointly moved to dismiss the foreclosure proceedings. Shortly thereafter, Polsinelli, acting in his capacity as receiver, filed his final report concerning the receivership estate. Luxury objected to the report and requested permission to assert claims against Polsinelli and McKinley. The parties requested an evidentiary hearing. Following the conclusion of the evidentiary hearing, the trial court accepted Polsinelli's final report, discharged Polsinelli, and closed the receivership estate. Luxury's subsequently filed motion to correct error was denied by the trial court. On appeal, the parties raise numerous issues, one of which we find dispositive. Concluding that the subsequent claims which Luxury seeks to bring against Polsinelli or McKinley are barred by the doctrine of res judicata, we affirm the trial court's order denying Luxury's motion to correct error.

## FACTS AND PROCEDURAL HISTORY

Luxury is the owner of two apartment complexes, the Las Palmas Apartments n/k/a

---

[1] PNC does not participate in the instant appeal.

2

Carmel Creek and Private Reserve, (collectively, "the collateral") located in Indianapolis. In order to secure funding to purchase the collateral, Luxury executed a promissory note and mortgage agreement with PNC. Luxury, however, failed to make payments pursuant to the terms of the mortgage documents.

On April 5, 2010, mortgagee PNC filed a foreclosure action against mortgagor Luxury. That same day, PNC filed a motion seeking the immediate appointment of a receiver to maintain the collateral during the pendency of the foreclosure proceedings. Over Luxury's objection, on July 21, 2010, the trial court appointed Polsinelli as receiver.

Pursuant to the trial court's order appointing Polsinelli as receiver, Polsinelli was granted numerous powers, including the power to take possession of, manage, operate, and maintain the collateral; collect rents and other receivables; negotiate with others concerning use of the collateral; make payments that Polsinelli judged to be necessary; and to "do any other acts it deems proper to protect and operate the [c]ollateral." Appellants' App. p. 33. Polsinelli was granted the power to enter into an agreement with a management company for the day-to-day management and operation of the collateral. Polsinelli was ordered to obtain insurance or maintain the existing policy for the collateral. Polsinelli was also authorized to seek protective funding advances from PNC that he deemed necessary to preserve the collateral. The order required Polsinelli to swear to perform his duties faithfully and to secure his oath by issuing a bond in the amount of $150,000.

Upon taking possession of the collateral, Polsinelli noted that the collateral was largely in a state of disrepair. Specifically, Polsinelli found numerous broken windows and

doors, graffiti and vandalism throughout the apartment complexes, decay, weathering over damaged areas, gutters that had not been maintained, damage to a roof, collapsed ceilings, mold and mildew in some of the apartments, landscaping overgrown and in disrepair, non-functional lighting, flea infestations in some of the apartments, evidence of rodent infestation, outstanding notices of violations from the Marion County Health Department, and pools that had not been properly maintained and were not operating correctly. Polsinelli also found that the asphalt was in a state of disrepair, a waterline had ruptured, and some apartments were missing appliances. In addition, hail damage, for which Luxury had received an insurance check, had not been fixed. Polsinelli was able to recover approximately $68,000 in outstanding rent, approximately $32,000 of which the receiver found in desk drawers or leasing files in the rental offices. In the leasing offices, Polsinelli also found that multiple files were missing and there were no office supplies, computers, or maintenance equipment.

Polsinelli contracted with McKinley to operate and manage the collateral on a day-to-day basis. Polsinelli established relationships with vendors to make repairs and set up a 24-hour emergency hotline for residents. Polsinelli secured the open buildings, increased lighting, and hired a professional security company to add a layer of security and to reduce potential liability to the collateral. Polsinelli began running both credit and criminal background checks on prospective tenants and for residents seeking to renew their leases. Over the course of the receivership, Polsinelli answered hundreds of maintenance calls and "turned" numerous apartments, meaning that apartments that were previously uninhabitable

were once again available for leasing. Polsinelli collected what rent he could and from January of 2011 until June of 2011, was able to increase revenue and collections at both properties.

Despite Polsinelli's efforts to make improvements to the collateral, the distressed state of the collateral demanded additional funds to sustain the turnaround and make additional needed improvements. To obtain the funds needed for the additional projects, Polsinelli invoked his power to request financial advances from PNC. PNC partially granted some of Polsinelli's requests but often forwarded the partial funds months after Polsinelli first made the request. Because of the lack of funds, Polsinelli was not able to make all necessary repairs, and, as a result, some apartments became uninhabitable and the receiver was forced to stop leasing activity for these apartments. Polsinelli returned the collateral to Luxury on August 8, 2011.

With respect to the foreclosure proceedings, PNC and Luxury eventually reached a settlement, and, on August 4, 2011, filed a joint motion requesting dismissal of PNC's foreclosure action against Luxury. In making this request, PNC and Luxury agreed that the trial court should have continuing jurisdiction for the purpose of settling the receivership estate. Also on August 4, 2011, a motion was filed to discharge Polsinelli and to settle the receivership estate. Luxury also filed a request for leave to join and assert claims against Polsinelli and McKinley. On August 16, 2011, the trial court conducted a teleconference on Luxury and PNC's joint motion to dismiss. During this teleconference, Luxury, PNC, and Polsinelli agreed to submit a combined proposed scheduling order.

On September 30, 2011, Polsinelli filed his final report on the receivership estate. On October 25, 2011, Polsinelli filed an "Unopposed Proposed Scheduling Order" in which Luxury, PNC, and Polsinelli requested that an evidentiary hearing be set to review Polsinelli's final report and Luxury's objections to Polsinelli's final report, as well as to "address and determine [Luxury's] Motion for Leave." Appellees' App. pp. 368-69. On October 27, 2011, the trial court approved the motion and scheduled an evidentiary hearing. The next day, Luxury filed its objections to Polsinelli's final report.

Prior to the start of the evidentiary hearing, Luxury requested that the trial court enter "Findings of Fact and Conclusions of Law" pursuant to Trial Rule 52. The trial court conducted an evidentiary hearing over the course of three days, March 7, 2012, March 8, 2012, and April 19, 2012. During the hearing, the trial court received evidence and heard testimony relating to Polsinelli's final report, Luxury's objections to that report, and Luxury's request for permission to assert claims against Polsinelli and McKinley.

On July 6, 2012, the trial court issued "Findings of Fact, Conclusions of Law and Judgment Entry" in which it accepted Polsinelli's final report, "fully and finally" discharged Polsinelli and the surety on his bond, and denied Luxury's motion for leave to join and assert claims against Polsinelli and McKinley. Appellants' App. pp. 26-31. On July 31, 2012, Luxury filed a motion to correct error.[2] The trial court denied Luxury's motion to correct error on August 21, 2012. This appeal follows.

**DISCUSSION AND DECISION**

---

[2] This motion was signed by Luxury's counsel who was admitted pro hac vice, and not by Luxury's local counsel.

## I. Overview of Relevant Authority Relating to Receiverships

A trial court may appoint a receiver in actions where, as here, a mortgagee seeks to foreclose the mortgage. Ind. Code § 32-30-5-1(4). Upon motion by the mortgagee, the court shall appoint a receiver if, at the time the motion is filed, the property is not occupied by the owner as the owner's principal residence and:

> (A) it appears that the property is in danger of being lost, removed, or materially injured;
> (B) it appears that the property may not be sufficient to discharge the mortgaged debt;
> (C) either the mortgagor or the owner of the property has agreed in the mortgage or in some other writing to the appointment of a receiver;
> (D) a person not personally liable for the debt secured by the mortgage has, or is entitled to, possession of all or a portion of the property;
> (E) the owner of the property is not personally liable for the debt secured by the mortgage; or
> (F) all or any portion of the property is being, or is intended to be, leased for any purpose.

*Id.*

Before beginning his duties as a receiver, a receiver must swear to perform the duties of a receiver faithfully and execute a written undertaking, i.e., a bond, with one or more sureties, to ensure that he faithfully discharges his duties and obeys the court's orders. Ind. Code § 32-30-5-3. "A receiver may, under control of the court or judge: (1) bring and defend actions; (2) take and keep possession of the property; (3) receive rents; (4) collect debts; and (5) sell property; in the receiver's own name, and generally do other acts respecting the property as the court or judge may authorize." Ind. Code § 32-30-5-7.

Before a receiver can be discharged from his duties, he must file a report in final settlement of the receivership proceedings. Ind. Code § 32-30-5-14. The report must set

7

forth all receipts and disbursements to the date of the accounting, as well as other appropriate information relative to the administration of the receivership, liquidation of the receivership, and declaration and payment of dividends. Ind. Code § 32-30-5-15. Interested parties may file objections to the receiver's report within thirty days of its filing. Ind. Code § 32-30-5-18(a). If objections are not filed within thirty days, they are forever barred. Ind. Code § 32-30-5-18(b). After the expiration of the thirty day period to object, the trial court shall, without delay, proceed with a hearing and determination of the objections or exceptions, pass upon the account or report, order the payment of a partial or final dividend, and make other appropriate orders. Ind. Code § 32-30-5-19.

The trial court's approval of a receiver's report releases and discharges the receiver and the surety on the receiver's bond "for all matters and things related to or contained in" the report. Ind. Code § 32-30-5-20. Upon the trial court's approval of the receiver's final report and the receiver's performance and compliance with the trial court's order made on the final report, "the receiver and the surety on the receiver's bond shall be fully and finally discharged and the court shall declare the receivership estate finally settled and closed subject to the right of appeal of the receiver or any creditor, shareholder, or other interested party who has filed objections or exceptions" to the report. Ind. Code § 32-30-5-21.

## II. Standard of Review

Luxury appeals from the denial of its motion to correct error.

A trial court is vested with broad discretion to determine whether it will grant or deny a motion to correct error. *Volunteers of America v. Premier Auto Acceptance Corp.*, 755 N.E.2d 656, 658 (Ind. Ct. App. 2001). A trial court has abused its discretion only if its decision is clearly against the logic and effect

of the facts and circumstances before the court or the reasonable inferences therefrom. *Id*. The trial court's decision comes to us cloaked in a presumption of correctness, and the appellant has the burden of proving that the trial court abused its discretion. *Id*. In making our determination, we may neither reweigh the evidence nor judge the credibility of witnesses. *Id*.

*Jones v. Jones*, 866 N.E.2d 812, 814 (Ind. Ct. App. 2007).

Upon reviewing a motion to correct error, this court also considers the standard of review for the underlying ruling. *Life v. F.C. Tucker Co., Inc.*, 948 N.E.2d 346, 349 (Ind. Ct. App. 2011) (citing *Shane v. Home Depot USA, Inc.*, 869 N.E.2d 1232, 1234 (Ind. Ct. App. 2007)). Here, pursuant to Luxury's request, the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52. Where a trial court has entered findings of fact and conclusions thereon pursuant to a party's request, we engage in the following two-tiered standard of review:

> We must first determine whether the evidence supports the findings of fact and then whether the findings support the judgment. We will not reverse the trial court's findings and judgment unless they are clearly erroneous. Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences from the evidence to support them. The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. In making these determinations, we will neither reweigh the evidence nor judge witness credibility, considering only the evidence favorable to the judgment and all reasonable inferences therefrom.
>
> While we defer substantially to findings of fact, we do not do so for conclusions of law. We apply a de novo standard of review to conclusions of law and owe no deference to the trial court's determination of such questions.

*Gates v. Houston*, 897 N.E.2d 532, 534-35 (Ind. Ct. App. 2008) (quoting *Mueller v. Karns*, 873 N.E.2d 652, 657 (Ind. Ct. App. 2007)).

## III. Analysis

9

Generally, when one seeks to sue a receiver in an independent action, "there is a condition precedent that leave to sue the receiver must be obtained from the receivership court." *Hazifotis v. Citizens Fed. Sav. & Loan Ass'n*, 537 N.E.2d 35, 38 (Ind. Ct. App. 1989). "The condition precedent has its basis in common law." *Id*. The question of whether to grant a motion for leave to sue a receiver in an independent suit is a matter for the court's discretion. *Martin v. Forrey*, 100 Ind. App. 371, 376, 193 N.E. 679, 681 (1935).

In the instant matter, the trial court conducted a three-day evidentiary hearing during which it heard evidence relating to Polsinelli's final report, Luxury's objections to the report, and Luxury's motion for leave to sue Polsinelli and McKinley. Luxury asserted that Polsinelli had negligently performed his duties and wanted permission to recover both Polsinelli's bond and additional funds through a separate negligence action. Upon considering the evidence and arguments presented by the parties, the court determined that Polsinelli did not act negligently in performing his duties, accepted Polsinelli's final report, denied Luxury's motion for leave to file a separate action against Polsinelli, "fully and finally discharged" Polsinelli and his bond, and closed the receivership estate. Appellants' App. p. 31. Luxury does not challenge the trial court's approval of Polsinelli's final report, Polsinelli's discharge, or the settling of the receivership estate on appeal.

Again, the trial court's approval of the final report releases and discharges the receiver and surety on the receiver's bond for all matters and things related to or contained in the report. Ind. Code § 32-30-5-20. This rule is consistent with this court's prior opinion in *Ratcliff v. Citizens Bank of Western Indiana*, 768 N.E.2d 964, 970 (Ind. Ct. App. 2002), in

10

which we concluded:

> Even before the non-claim statute, Indiana Code Section 34-48-4-5, it was the common law in Indiana that once the court approves a receiver's Final Report, it is conclusive as to the rights of the parties thereunder. Put another way:
>
>> "[A] party to an action, in which a receiver has been appointed, must take notice of everything done in that action, including the final report filed by the receiver and his discharge as such.... A party properly brought into court is chargeable with notice of all subsequent steps taken in the cause down to and including the judgment."
>
> *Flanders v. Ostrom*, 206 Ind. 87, 187 N.E. 673, 676 (1933) (holding court did not err when it denied motion to vacate judgment approving receiver's Final Report).

As such, Polsinelli and McKinley argue that the trial court acted within its discretion in denying Luxury's motion for leave and motion to correct error because Luxury is barred from raising any subsequent claims against either Polsinelli or his agent, McKinley. We agree.

In *Hazifotis*, this court considered whether a party was barred from bringing a separate suit against a receiver after the receivership court determined that the receiver had faithfully carried out his duties as receiver, accepted the receiver's final report, and discharged the receiver. 537 N.E.2d at 38. In finding that a subsequent suit by the party against the receiver would be barred by the issue preclusion branch of the doctrine of res judicata, the court stated:

> The doctrine of res judicata is described as consisting of two branches, claim preclusion and issue preclusion. Claim preclusion applies when there has been a final judgment on the merits which acts as a complete bar to a subsequent action on the same claim between the same parties or those in privity with them. *Town of Flora v. Indiana Service Corp.* (1944), 222 Ind. 253, 256, 53 N.E.2d 161, 163. Issue preclusion arises when the claims are not the same, but some fact or question has been determined in the former suit and is again put in issue in a subsequent suit between the same parties or their privies. *Id.* at 257, 53 N.E.2d at 163. The question presented to this Court is

11

> whether issue preclusion bars relitigation of the adequacy of [one's] performance as receiver.
>
> To invoke the issue preclusion branch of res judicata, four elements must be satisfied: 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the matter now in issue was determined in the former suit; 3) the particular controversy adjudicated in the former action must have been between parties to the present suit or their privies; and 4) the judgment in the former suit must have been rendered on the merits. *Peterson v. Culver Educational Foundation* (1980), Ind. App., 402 N.E.2d 448, 460-461.

*Id*. at 38-39.

The court concluded that the elements of issue preclusion were satisfied and the party was barred from bringing the independent suit because the pivotal issue in Hazifotis's collateral suit was the adequacy of the receiver's performance as receiver, and that the issue had been brought before the receivership court by an objection to the receiver's discharge. *Id*. at 39. The judgment of the receivership court was rendered on the merits and all relevant parties were parties in both the receivership proceedings and the collateral suit. *Id*. The court concluded that "[t]he doctrine of res judicata precluded relitigation of the issue whether [the receiver] faithfully carried out his duties as receiver. Because that issue was the basis for Hazifotis'[s] collateral suit, [the receiver and the mortgagee bank] were entitled to judgment as a matter of law." *Id*.

This conclusion is consistent with the findings of other jurisdictions as well. In *Hogg v. Siebrecht*, 464 N.W.2d 209, 210-11 (S.D. 1990), the Supreme Court of South Dakota held that the doctrine of res judicata barred a party's subsequent suit against a receiver because the matters sought to be litigated in the subsequent suit could have been or should have been litigated at the time the receiver's final report and account were approved. In *Aviation Brake*

12

*Systems, Ltd. v. Voorhis*, 133 Cal. App. 3d 230, 234-35 (Ca. 1982), the California Court of Appeal concluded that a subsequent suit against a receiver was barred by the doctrine of res judicata because the receiver's final report had been submitted and accepted and the issues which the party sought to bring in the subsequent suit were not issues that could not have been raised at the time the trial court considered the receiver's final report and the objections thereto.

Likewise, in *Yaw v. Beeghly*, 109 Ill. App. 3d 627 (1982), the Appellate Court of Illinois considered whether the discharge of the receiver and acceptance of the receiver's final report barred a subsequent negligence action against the receiver. The court concluded that it did, finding that "[a]lthough a new suit in negligence was brought against the receiver, it was clearly based on his conduct in executing his duties as receiver." 109 Ill. App. 3d at 632. In making this conclusion, the court stated that "[t]o allow appellants to avoid the doctrine of res judicata simply by bringing a new suit would undermine its very purpose," and, accordingly, the doctrine of res judicata bars appellants from bringing a negligence suit against the receiver. *Id*. at 632-33.

Here, like in *Hazifotis*, the pivotal issue in Luxury's collateral suit was the adequacy of Polsinelli's performance as receiver. This issue was considered by the trial court during the three-day evidentiary hearing by Luxury's objection to Polsinelli's final report. After the three-day evidentiary hearing, the trial court rendered judgment on the merits. The trial court accepted the report, discharged Polsinelli, and closed the receivership estate. In doing so, the trial court determined that Polsinelli and his agent, McKinley, had acted in an appropriate

13

fashion and that Polsinelli had adequately performed his duties as receiver. This factual determination would preclude a subsequent determination that Polsinelli had acted negligently in his administration of the receivership estate. Also, nothing in the record indicates that Luxury sought to bring any claims against Polsinelli's agent separate from those it desired to bring against Polsinelli or that Polsinelli's agent had any duty to Luxury. At most, McKinley had a duty to Polsinelli to act appropriately as his agent, and, the trial court effectively found that McKinley had met this duty by determining that Polsinelli, through McKinley's acts, had faithfully carried out his duty as receiver.

Moreover, Luxury's reliance upon the recent opinion of the Ohio Court of Appeals in *PNC Bank, National Association v. Kidz Real Estate Group, LLC, et al.*, 2013 WL 1385638 (Oh. Ct. App. April 5, 2013), can easily be distinguished from the instant matter because, unlike in the instant matter, in *Kidz*, the trial court did not hold an evidentiary hearing before denying Kidz's motion for leave or accepting the receiver's final report. The Ohio Court of Appeals reversed the trial court's denial of Kidz's motion to leave and order discharging the receiver finding that it was an abuse of discretion for the trial court to do so without first conducting an evidentiary hearing. *Id*. at *10.

Because the trial court has already made a factual determination on Polsinelli's performance as receiver after a three-day evidentiary hearing and has discharged Polsinelli and closed the receivership estate, we conclude that any subsequent suit by Luxury regarding issue of whether Polsinelli faithfully carried out his duties as receiver is barred by the issue preclusion branch of the doctrine of res judicata. Accordingly, we affirm the judgment of the

14

trial court.

The judgment of the trial court is affirmed.

BAILEY, J., and MAY, J., concur