**FOR PUBLICATION**



ATTORNEY FOR APPELLANTS:

**BRUCE N. MUNSON**
Bruce N. Munson, P.C.
Muncie, Indiana

ATTORNEY FOR APPELLEE:

**JESSICA S. LACY**
Law Office of Jessica S. Lacy
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BELINDA DOUGLAS, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1309-JP-403 |
| | ) | |
| NEIL SPICER, | ) | |
| | ) | |
| Appellee-Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| L.S., | ) | |
| | ) | |
| Intervenor-Appellant/Petitioner. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable David H. Coleman, Judge
Cause No. 32D02-1302-JP-26

**May 8, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Belinda Douglas ("Mother") and L.S. appeal the trial court's judgment on Mother's petition for adjudication of Neil Spicer's ("Father") child support arrearage. Mother and L.S. present a single issue for our review, namely, whether the trial court erred when it ordered Father to pay $6,600 in back child support.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Father and Mother were unmarried and living together when, on February 11, 1994, Mother gave birth to L.S. Father was listed as L.S.'s father on her birth certificate. Father and Mother shared expenses in providing a home for L.S. When L.S. was approximately four years old, Father moved out of the family home.

On December 31, 2004, Mother initiated a paternity action and filed a petition for child support. And on February 5, 2005, the trial court entered a provisional order for Father to pay Mother $200 per week in child support. On October 13, after both parties had failed to appear at a status hearing, the trial court dismissed the paternity action. Father did not pay any of the court-ordered child support.

Father continued to provide financial support for the care of L.S., including providing health insurance for L.S. In February 2010, Father moved back in with Mother and L.S. Father paid rent to Mother.

On October 8, 2012, Mother filed a "Motion to Re-Open the Case," which the trial court granted. And on October 29, Mother filed a "Petition for Adjudication of Support Arrearage and for entry of Judgment Thereon." When Father learned about Mother's

2

petition, he moved out of the family home. Father continued to provide financial support for L.S.

Following an evidentiary hearing on June 20, 2013, the trial court issued an order stating in relevant part as follows:

> The evidence revealed that the respondent never paid $200.00 per week through the Clerk as ordered on February 23, 2005. The parties apparently decided to drop the case and both contributed to [L.S.]'s support. Neither party filed a motion to dismiss the case. They simply did not appear for the hearing on October 12, 2005. The respondent's contribution for [L.S.] during this time is not clear. For a period of time, the parties lived together with [L.S.] in the petitioner's home.
>
> The court finds that there were 33 weeks between February 23, 2005 and October 12, 2005 when the court dismissed the case.
>
> The court determines that the respondent owes the petitioner child support for 33 weeks at $200.00 per week for a total of $6,600.00.

Appellants' App. at 49-50. Mother filed a motion to correct error alleging that Father's child support arrearage was $74,000, and L.S. filed a motion to intervene. The trial court denied Mother's motion, but granted L.S.'s motion. This appeal ensued.

## DISCUSSION AND DECISION

In this matter neither party requested findings of fact or conclusions thereon. Generally, when, as here, a trial court enters findings of fact and conclusions thereon sua sponte, we apply a two-tiered standard of review; first we determine whether the evidence supports the findings, and second, whether the findings support the judgment. Davis v. Davis, 889 N.E.2d 374, 379 (Ind. Ct. App. 2008). In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. Id. We do not

3

reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Id. Those appealing the trial court's judgment must establish that the findings are clearly erroneous. Id. Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. Id. We do not defer to conclusions of law, however, and evaluate them de novo. Id.

Decisions concerning the payment of child support rest within the sound discretion of the trial court. Dore v. Dore, 782 N.E.2d 1015, 1018 (Ind. Ct. App. 2003). On review, we will reverse a trial court's decision in child support matters where we find that there was an abuse of discretion or if the trial court's determination on the issue is contrary to law. Id.

Here, Mother's[1] argument is two-fold. First, Mother contends that the February 2005 provisional child support order did not terminate with the dismissal of the paternity case in October 2005. Second, Mother contends that Father did not come "close to meeting his obligation to support his daughter from 2005 onward." Appellants' Brief at 4. We cannot agree.

Indiana Code Section 31-15-4-14 provides in relevant part that a provisional order in a dissolution action terminates when the final decree is entered or the petition for dissolution is dismissed. While this is a paternity action, we hold that the same principle applies here. See, e.g., In re Paternity of V.A.M.C., 768 N.E.2d 990, 1000 n.4 (Ind. Ct. App. 2002) (noting we may consider case law holdings on custody and visitation made in dissolution proceedings when determining issues related to custody and visitation in

---

[1] While Mother and L.S. are both appellants, for ease of discussion, we refer to the contentions on appeal as Mother's.

4

paternity proceedings because in both types of cases the predominant concern is the best interests of the child). Mother does not dispute that the February 2005 child support order was a provisional order for "temporary support" pending a hearing on child support. See Appellants' App. at 1. Thus, we conclude that the trial court did not err when it determined that Father's court-ordered child support obligation terminated after thirty-three weeks in October 2005.

Still, Mother contends that Father did not satisfy his common law duty to support his daughter. See Pettit v. Pettit, 626 N.E.2d 444, 445 (Ind. 1993) (noting parent's obligation to support child is founded in nature, not contract). But Father testified that, over the course of L.S.'s life, he had provided "over fifty percent" of L.S.'s financial support. Transcript at 35. And the evidence shows that Father provided health insurance for L.S. throughout her life, and he made consistent and significant contributions to L.S.'s car insurance, clothing, food, school expenses, and the like. Mother's contention on this issue amounts to a request that we reweigh the evidence, which we will not do.

Finally, Mother maintains that, if the parties agreed to "operate without court involvement" in providing financial support for L.S., such an agreement was "contrary to Indiana's public policy of protecting the welfare of children." Appellants' Brief at 5. In support of that contention, Mother cites to Straub v. B.M.T., 645 N.E.2d 597, 600 (Ind. 1994). Our supreme court has explained that case as follows:

> In Straub, we addressed the enforceability of a contract between two adults engaged in a sexual relationship to the effect that the father would not be held financially responsible in the event that a child was born. We held that while we generally enforce properly formed contracts, a contract may be void as against public policy in certain very limited circumstances. The contract in Straub was one such example because the right to support lies

5

with the child and cannot be contracted away by others; the consideration for the contract was sexual intercourse; and the contract did not contain certain formalities generally thought necessary in agreements enabling childless individuals to bear children. It was this unique set of circumstances that led our court to hold that contract void as against public policy.

K.S. v. R.S., 669 N.E.2d 399, 405-06 (Ind. 1996) (citations omitted).

We do not find Straub apposite here, where Father and Mother did not have a formal support agreement but both have provided financial support for L.S. But in K.S., the court addressed an agreement where the parties stipulated

that because of the joint custody arrangement, there shall be no support paid from one party to the other party unless the parties decide that it would be best for one party to have more than 50% of the actual physical custody of the minor child and at that time the parties will negotiate a support figure between the parties.

669 N.E.2d at 406. Our supreme court held:

Although not without some doubt, we do not believe that this agreement constitutes contracting away D.S.'s right to child support from a parent, as was clearly prohibited by Straub. This agreement merely states that, at this time, there is no need for one parent to provide another parent with support payments. It in no way provides that one parent is not now and never will be responsible for supporting D.S.

Id.

Here, again, the evidence shows that Father provided significant and consistent financial support for the care of L.S. throughout her life totaling more than fifty percent of the expenses. Indeed, while Mother initially sought court-ordered child support in 2005, she did not follow through on that request after the paternity case was dismissed. The evidence shows that Father and Mother worked together, amicably, to provide for L.S. without court intervention for most of L.S.'s childhood. And there is no evidence to

6

support Mother's contention that Father attempted to contract away L.S.'s right to child support from him. The evidence supports the trial court's conclusion that Father's child support arrearage is $6,600.

Affirmed.

VAIDIK, C.J., and BROWN, J., concur.