## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 08 2015, 9:06 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Brent R. Dechert | Alan D. Wilson |
| Dechert Law Office | Kokomo, Indiana |
| Kokomo, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Allen E. Wilson, | July 8, 2015 |
| *Appellant-Respondent,* | Court of Appeals Case No. 34A02-1410-DR-754 |
| v. | Appeal from the Howard Circuit Court |
| Amy L. Wilson, | The Honorable Lynn Murray, Judge |
| *Appellee-Petitioner.* | Cause No. 34C01-1111-DR-927 |

**Najam, Judge.**

## Statement of the Case

Allen E. Wilson ("Husband") appeals the trial court's order dissolving his marriage to Amy L. Wilson ("Wife") and distributing the marital estate. Husband raises five issues for our review, which we consolidate and restate as the following three issues:

1.      Whether the trial court erred when it denied Husband's motion for relief from judgment without first allowing further discovery.

2.      Whether the trial court erred when it determined certain property was within or not within the marital estate.

3.      Whether the trial court erred when it valued a 2002 Corvette.

We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

Husband and Wife were married on April 1, 2001, and had one child of the marriage, E.W.  In November of 2011, Wife filed a petition for the dissolution of marriage.  More than two and one-half years after the petition had been filed, on June 27, 2014, the trial court held a final fact-finding hearing on Wife's petition.

At that hearing, Wife testified that she had accepted a "buy-out" of her retirement pension with General Motors during the marriage and that she had "no pension left."  Tr. at 67.  Wife also testified that the parties had a line of credit with Key Bank; this line of credit was used both for the marriage and for Husband's auto-repair business.  Four days before Wife filed her dissolution petition, Husband, without Wife's knowledge or consent, advanced himself $36,815 from the line of credit.  Immediately prior to this advance, the balance on the line of credit was $28,061.54.

[5] The parties agreed that they owned several vehicles during the marriage. They agreed they had purchased two "Bracket" and two "Outlaw" race cars during the marriage for E.W.'s use. *Id.* at 60. The parties agreed that they only owned one race car at a time, that Husband sold one of the Outlaws last, and that he had sold that car for a fair market value at $7,500. The parties also owned a 2004 Chevrolet pickup truck during the marriage. In a provisional order, the court had awarded the truck to Husband. Thereafter, but before the final hearing, E.W. wrecked the truck, which was not covered by a comprehensive liability insurance policy. And, at the time Wife filed the dissolution petition, the parties owned a 2002 Chevrolet Corvette. Shortly after Wife filed the dissolution petition, however, Husband traded in the Corvette for $19,000. Wife believed the value of the Corvette to be closer to $28,875, though she based that value on her mistaken belief that the Corvette was a 2004 model.

[6] On August 5, the trial court, *sua sponte*, entered its findings of fact and conclusions thereon dissolving the parties' marriage. In relevant part, the court found and concluded as follows:

> 18. At separation, the Husband owned a 2002 Chevrolet Corvette Z06, which he later traded on the purchase of a 2013 Corvette 427 during the provisional period without notice to the Wife or the Court. The Husband received credit for the trade in the sum of $19,000.00, which the Court finds is less than the fair market value of the vehicle at the time of separation. The 2002 Corvette was a marital asset, . . . which the court finds had a fair market value at separation of $22,000.00 and is awarded to the Husband. The 2013 Corvette was acquired after separation and is not a marital asset. . . .

19.  At separation, the Husband owned a 2004 Chevrolet Truck having a value of $11,825.00.  The Husband is awarded this vehicle, and [he] shall hold the Wife harmless from all liens and obligations associated with the vehicle.

* * *

23.  At separation, the Husband owned two outlaw cars and two bracket cars he had purchased during the marriage, which were used by the parties' son [E.W.], then a minor, in racing activities . . . .  After separation, the Husband sold all four (4) vehicles.  The court finds that these vehicle[s] were marital assets at the time of separation.  The outlaw cars had a value of $19,000.00 and $7,500.00, and the bracket cars had a value of $6,000.00 and $4,000.00.

* * *

34.  At separation, the parties owed a debt to Key Bank on a line of credit account used primarily by the Husband for expenses and obligations of the business.  On November 18, 2011, four (4) days prior to the separation date, the Husband took out an advance on the account in the amount of $36,815.00, of which the Wife did not receive or benefit [sic].  Prior to the advance, the amount owed to Key[ ]Bank was $28,061.54.  The court finds that the Husband is responsible for the debt owed to Key[ ]Bank on the line of credit account and that the marital portion of the debt is $28,061.51.

Appellant's App. at 29-30, 32.  The court then distributed the marital assets fifty-fifty between Husband and Wife, which required Husband to pay an equalization payment to Wife of $114,090.42.

On August 29, Husband filed a document titled, "Motion to Reopen Evidence[,] Motion for Relief from Judgment[, and] Motion to Correct Errors." *Id.* at 42. That same day, Husband, along with other related motions, also filed a document titled, "Motion for Order Allowing [Husband] to Obtain Discovery and for Evaluation of Retirement/Pension Value." *Id.* at 55. In essence, in these motions Husband asserted that the court had erred in its inclusion of certain assets in the marital estate as well as in its valuation of certain assets. Husband further asserted that "[i]t has been brought to [his] attention, through sources familiar with the parties, . . . that [Wife] accepted a 'buy down' rather than a 'buy out' of her pension" with General Motors. *Id.* at 56.

On September 22, the trial court entered an order on all of Husband's post-judgment motions ("the September 22 Order"). In relevant part, the court concluded as follows:

> 4. At final hearing, there was undisputed evidence that [Wife] had no vested retirement benefit through her former employment with General Motors as of the separation date. There was no evidence that the Wife had not complied with discovery with respect to her retirement accounts or benefits, and her testimony at [the] hearing was consistent with the discovery she had provided to the Husband. At [the] hearing, the undisputed evidence was submitted that[,] during the marriage, the Wife had received a "buy out" from her former employer[,] General Motors[,] and the funds were used to the benefit of both parties before separation.

> 5. The basis for the Husband's motion to reopen evidence and conduct third party discovery is hearsay from an unknown third party, and he seeks to do what he had more than two (2) years

during the provisional period to do. The Husband had ample opportunity to conduct third party discovery as to any interest the Wife had as of the separation date in any retirement benefit with General Motors.

* * *

7. The Husband should not be able to reopen evidence to conduct discovery he could and should have done prior to [the] final hearing.

*Id.* at 76. With respect to Husband's complaints regarding the inclusion of certain assets in the marital estate or the valuation of certain assets, the court affirmed its earlier conclusions. The court then denied Husband's post-judgment motions, and this appeal ensued.

# Discussion and Decision

## *Standard of Review*

Husband appeals the September 22 Order, which was, in effect, the denial of a motion to correct error. We have explained our standard of review as follows:

> A trial court is vested with broad discretion to determine whether it will grant or deny a motion to correct error. *Volunteers of America v. Premier Auto Acceptance Corp.*, 755 N.E.2d 656, 658 (Ind. Ct. App. 2001). A trial court has abused its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences therefrom. *Id.* The trial court's decision comes to us cloaked in a presumption of correctness, and the appellant has the burden of proving that the trial court abused its discretion. *Id.* In making our determination, we may neither reweigh the evidence nor judge the credibility of witnesses. *Id.*

*Luxury Townhomes, LLC v. McKinley Props., Inc.*, 992 N.E.2d 810, 815 (Ind. Ct. App. 2013) (quoting *Jones v. Jones*, 866 N.E.2d 812, 814 (Ind. Ct. App. 2007)), *trans. denied*.

[10] Further, "[u]pon reviewing a motion to correct error, this court also considers the standard of review for the underlying ruling." *Id.*

> Generally, when, as here, a trial court enters findings of fact and conclusions thereon *sua sponte*, we apply a two-tiered standard of review; first we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Davis v. Davis*, 889 N.E.2d 374, 379 (Ind. Ct. App. 2008). In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id.* Those appealing the trial court's judgment must establish that the findings are clearly erroneous. *Id.* Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* We do not defer to conclusions of law, however, and evaluate them de novo. *Id.*

*Douglas v. Spicer*, 8 N.E.3d 712, 714 (Ind. Ct. App. 2014).

### Issue One:  Husband's Post-Judgment Request for Further Discovery

[11] On appeal, Husband first asserts that the trial court abused its discretion when it denied his post-judgment requests for further discovery. In particular, Husband argues that Wife misled him and the court when she stated in her interrogatory

responses—and then affirmed at the final fact-finding hearing more than two years later—that General Motors had bought out the entirety of her pension. Thus, Husband continues, pursuant to Indiana Trial Rule 60(D) he should have been allowed to conduct additional discovery post-judgment to determine the amount, if any, of Wife's remaining pension with General Motors.

[12] The crux of Husband argument is an attempt to frame his post-judgment motion as one based on Wife's alleged misrepresentations. Indeed, in his appellate brief Husband asserts that he had "no need to conduct additional discovery unless [Wife] was lying" in her interrogatory responses. Appellant's Br. at 11. But the trial court squarely rejected Husband's theory and, instead, concluded that Husband's motion was premised on newly discovered evidence that Husband should have discovered during the original discovery period. We cannot say that the trial court abused its discretion in reaching that conclusion.

[13] As we have explained: "When a new trial is sought based on newly-discovered evidence, the appellant must show, among other things, that the evidence could not have been discovered before the trial by the exercise of due diligence." *Hartig v. Stratman*, 760 N.E.2d 668, 671 (Ind. Ct. App. 2002), *trans. denied*. Further, we have long recognized that a litigant is obliged "to search for evidence in the place where . . . it would be most likely to be found," *id.* (quotation omitted), and, when a party neglects to follow-up with discovery, he does so at his "own peril and may not later turn to the doctrine of newly discovered evidence for relief," *id.* at 671-72.

Here, determining the veracity of Wife's interrogatory responses was a key reason for Husband to conduct additional discovery during the pendency of the dissolution action. Moreover, General Motors is the most likely source to have accurate information regarding its employees' pensions, and it was incumbent on Husband to follow-up on Wife's interrogatory responses accordingly. *Id.* As the trial court explained in the September 22 Order, Husband had more than two years to follow-up on Wife's responses. His choice to not do so was made at his own peril, and he cannot now rely on Trial Rule 60 for relief from the consequences of his prior decision. *Id.* We affirm on this issue.

### Issue Two: Whether Certain Assets Were Within the Marital Estate

Husband next contends that the trial court abused its discretion when it denied his post-judgment requests for the court to reconsider whether certain assets were to be included in or excluded from the marital estate. This issue requires consideration of whether the court's underlying findings and conclusions were clearly erroneous. In particular, Husband asserts that the trial court erred when it: (1) excluded Husband's advance on the Key Bank line of credit from the marital estate; (2) included the four race cars in the marital estate; and (3) included the 2004 Chevrolet pick-up in the marital estate. We address each argument in turn.

### The Line of Credit

We first consider Husband's assertion that the trial court erred when it excluded his $36,815 advance on the Key Bank line of credit from the marital estate.

According to Husband, he had previously deposited this money into the line of credit from an insurance settlement, which he later withdrew to improve marital property. Husband asserts on appeal that his testimony to that effect went undisputed. Husband is incorrect.

[17] During recross-examination, Wife testified as follows:

> Q: . . . was there damage to the barn or to the roof of any of the properties owned by you and [Husband] in 2011?
>
> A: Yes, and insurance covered them.
>
> Q: Are you familiar with whether [Husband] ever deposited funds in and withdrew funds out of that line of credit[,] similar to a bank account?
>
> A: No, he didn't.
>
> Q: Is it possible that he put the interest funds in that account and paid it down and then withdrew them to pay for the repair to the roof?
>
> A: No.
>
> Q: That's not possible?
>
> A: I mean, it could have been but I don't think . . .
>
> MS. PITCHER: OK, no other questions.

Tr. at 97-98 (ellipses original).

[18]     According to Husband, Wife's testimony above "does not exactly refute Husband's version of events." Appellant's Br. at 14. But it does, twice. Wife directly said "[n]o" both times she was asked whether Husband made deposits into the line of credit. Tr. at 97-98. It was within the trial court's prerogative to find that Husband's version of events was not credible in light of Wife's testimony, and we will not reconsider that finding on appeal. And, in light of the timing of the advance and the trial court's finding that Wife received no benefit from it, we cannot say that the trial court erred when it excluded Husband's $36,815 advance from the marital estate. *See, e.g.*, *Thompson v. Thompson*, 811 N.E.2d 888, 915 (Ind. Ct. App. 2004) (affirming the trial court's exclusion of a certain amount of money from the marital estate after noting that the timing of the transaction and whether the marriage benefited from the transaction were relevant factors for the trial court to consider), *trans. denied*.

*The Race Cars*

[19]     Husband next asserts that the trial court erred when it included the four race cars in the marital estate. Husband's argument on appeal here is two-fold: first, he asserts that the race cars were gifts for E.W. and, therefore, outside the marital estate; second, he asserts that the undisputed evidence showed that Husband and Wife only owned one race car at a time, which included at the time Wife filed her petition for dissolution.[1]

---

[1] Wife's arguments on appeal focus only on the values of the race cars, but those values were never disputed.

[20] Regarding Husband's first argument, he testified that he had purchased the vehicles during the marriage. As such, it was within the trial court's prerogative to consider the vehicles marital assets.

[21] But Husband's second argument is correct. He testified that the family was only in possession of one race car at a time, and they would trade in a race car to obtain another race car. During her testimony at the final hearing, Wife agreed with those aspects of Husband's testimony. Tr. at 87. Husband further testified that the $7,500 Outlaw race car was the last car sold, and that he sold it after E.W. had graduated from high school, which, in turn, was after Wife had filed her petition for the dissolution of marriage. Accordingly, we reverse the trial court's findings and conclusions with respect to the four race cars and remand with instructions that the court consider only the $7,500 Outlaw marital property at the time of the parties' separation.

*The 2004 Chevrolet Pick-Up Truck*

[22] Husband also contends that the trial court erred when it included the 2004 Chevrolet pick-up truck in the marital estate. According to Husband, because the truck was wrecked after the parties' separation but before the final hearing, the court had no discretion to include it in the marital estate. But Husband cites no authority for this proposition, and it is well established that the court may use "any date between the date of filing the dissolution petition and the date of the hearing" to determine the "valu[e of] the marital assets." *Quillen v. Quillen*,

671 N.E.2d 98, 102 (Ind. 1996). That is what the court did here, and we cannot say the court erred in doing so.

### *Issue Three: Valuation of the 2002 Corvette*

[23] Finally, Husband asserts that the trial court erred when it valued the 2002 Corvette at $22,000. Husband testified that he traded in that vehicle for a newer model and received $19,000 for it, which was identical to an appraisal he had received for the vehicle. Wife submitted evidence that a 2004 model Corvette was worth $28,875.

[24] We agree with Husband. Wife's only evidence regarding the value of any Corvette went to the value of a model year Husband did not own. As such, her proffered evidence was in no way probative to the issue at hand, namely, the value of the 2002 model. Thus, Husband's evidence that the 2002 Corvette had a fair market value of $19,000 was not disputed, and the trial court erred when it valued the Corvette at $22,000.

## Conclusion

[25] In sum, we affirm the trial court's judgment in all respects except for its inclusion of all four race cars in the marital estate and its valuation of the 2002 Corvette. On those issues, we reverse the trial court's judgment and remand with instructions that the court: (1) include only the $7,500 Outlaw race car in the marital estate; (2) value the 2002 Corvette at $19,000; and (3) proceed accordingly.

Affirmed in part, reversed in part, and remanded with instructions.

Baker, J., and Friedlander, J., concur.