

**FILED**

Jul 03 2018, 9:05 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Donald E. Morgan
Thomas J. O. Moore
Deborah L. Law
Office of Corporation Counsel
Indianapolis, Indiana

James J. Ammeen
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Clifford R. Courtney
Frederic C. Sipe
Indianapolis, Indiana

Robert A. Smith
Smith Wade, LLC
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

City of Indianapolis,

*Appellant-Plaintiff/Counterclaim Defendant,*

v.

Towne & Terrace Corporation, *et al.*,

*Appellees-Defendants/Counterclaim Plaintiffs.*

July 3, 2018

Court of Appeals Case No.
49A02-1711-OV-2686

Appeal from the Marion Superior Court

The Honorable Cynthia J. Ayers, Judge

Trial Court Cause No.
49D04-1311-OV-42187

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellants-Plaintiff/Counterclaim Defendant, City of Indianapolis (City), appeals the trial court's summary judgment in favor of Appellees-Defendants/Counterclaim Plaintiffs), Towne & Terrace Corporation, *et al.*, (Towne & Terrace).

We affirm.

# ISSUES

The City presents four issues on appeal, three of which we find dispositive and which we restate as follows:

(1) Whether no genuine issue of material fact exists to conclude that Indiana Code section 32-31-1-22 barred the City's claims against Towne & Terrace;

(2) Whether no genuine issue of material fact exists to conclude that the City's public nuisance action under Indiana Code section 32-30-6-7 against Towne & Terrace is not succesful ; and

(3) Whether there is no genuine issue of material fact to conclude that the City owed Towne & Terrace maintenance assessments on the units it acquired ownership to.

# FACTS AND PROCEDURAL HISTORY

[4] Towne & Terrace is a residential complex near the intersection of East 42nd Street and Post Road in Indianapolis, Indiana. Incorporated in 1964 for the purpose of owning and maintaining the common areas of the condominium development, Towne & Terrace is a private, nonprofit Indiana corporation with volunteer directors. Unlike more recent condominium developments, Towne & Terrace homeowners are members of Towne & Terrace and do not own any interest in its common areas. The individual lots are transferred by deed. To keep Towne & Terrace apprised of ownership changes in the individual condominiums, the corporation's Amended Articles of Incorporation require the issuance of a certificate of membership to each member, and it is each member's responsibility to inform Towne & Terrace when his or her lot is transferred to a new owner. The previous member must then request a new certificate of membership to be issued to the new member. As of 2017, the City owned at least 49 units in Towne & Terrace. Thirteen of the units were acquired as part of a settlement in an unrelated nuisance action. The remainder of the units became the City's possession after they were not purchased at tax sales. Since being acquired, each of the City's homes in Towne & Terrace has been left vacant and boarded up.

[5] Over the years, the East side of Marion County has suffered a major crime wave. In 2015, the Federal Bureau of Investigation, the United States Attorney's Office, the Indiana State Police, the Marion County Sheriff, and Indianapolis Metropolitan Police Department conducted raids throughout

Indianapolis, leading to the arrest of thirty-five criminals—the vast majority on the East side.

[6] On December 16, 2014, the City filed an Amended Complaint against Towne & Terrace and four members of its board in their representative capacities, alleging that Towne & Terrace "failed to provide, maintain, and ensure that all common areas of the [] residential complex are safe from hazardous conditions, including but not limited to general lawlessness and the threat of reasonably foreseeable criminal intrusions." (Appellant's App. Vol. II, p. 40). Specifically, the City noted that "[s]ince January 1, 2008, there have been at least excessive police runs and numerous reports filed by the Indianapolis Metropolitan Police Department at the [] residential complex involving crimes such as homicide, rape, fraud, arson, domestic battery, public intoxication, child abduction, child abuse, larceny, burglary, armed robbery, aggravated assault, vandalism, intimidation, invasion of privacy, and trespass." (Appellant's App. Vol. II, p. 42). As such, the City requested the trial court, among other things, to

> [a]ward the City compensatory damages against [Towne & Terrace], jointly and severally, to compensate the City for all damages caused by [Towne & Terrace's] operation, management and maintenance of the [Towne & Terrace] residential complex and individual units, including but not limited to:
>
> i. All resources expended by the City, including but not limited to the Department of Public Safety, IMPD, DCE, and MCHD, in response to the unreasonable volume of investigations, reports, and citations caused by [Towne & Terrace's] neglect of the [] residential complex and individual units, and

ii. Any and all other public resource expenditures resulting from [Towne & Terrace's] neglect of the [] residential complex.

(Appellant's App. Vol. II, pp. 47-48).

[7] On January 30, 2015, Towne & Terrace filed an Answer and Counterclaim, denying the allegations in the Amended Complaint and asserting that the City owed Towne & Terrace maintenance fees on the individual units owned by the City. On October 3, 2016, Towne & Terrace moved for summary judgment on its counterclaim against the City. The trial court conducted a hearing on May 17, 2017.

[8] Prior to the trial court issuing a ruling, Towne & Terrace filed a second motion for summary judgment on the City's Amended Complaint; to which the City responded on July 17, 2017. After a hearing on Towne & Terrace's second motion for summary judgment, the trial court issued its ruling on October 18, 2017, granting summary judgment to Towne & Terrace on the City's Amended Complaint and partial summary judgment on Towne & Terrace's counterclaim.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[9] In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we

must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. A fact is 'material' for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action; a factual issue is 'genuine' if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. 2000). The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *First Farmers Bank & Trust Co.*, 891 N.E.2d at 607. When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id*. Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id*.

[10] We observe that, in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id*.

I. *Indiana Code section 32-31-1-22*

Indiana Code section 32-31-1-22 was enacted as part of P.L. 266-2017 and became effective July 1, 2017, several years after the City filed its Amended Complaint. The statute provides, in pertinent part:

> (d) [] a political subdivision may not adopt or enforce any ordinance, rule or regulation that imposes a penalty,[1] or allows for the imposition of a penalty against a tenant, an owner, or a landlord for a contact made to request law enforcement assistance or other emergency assistance for one (1) or more rental units if:
>
>> (1) the contact is made by or on behalf of:
>>
>>> (A) a victim or potential victim of abuse:
>>>
>>> (B) a victim or potential victim of a crime; or
>>>
>>> (C) an individual in an emergency; and
>>
>> (2) either of the following applies:
>>
>>> (A) at the time the contact is made, the person making the contact reasonably believes that law enforcement assistance or other emergency assistance is necessary to prevent the perpetration or escalation of abuse, a crime, or an emergency.
>>>
>>> (B) if abuse, a crime, or an emergency occurs, the law enforcement assistance or other emergency assistance was needed.
>
> * * * *
>
> (i) Nothing in this section shall be construed to prevent an attorney representing a city, county or town from bringing a nuisance action described under [I.C. §] 32-30-6-7(b) against a landlord or owner of a rental unit.

---

[1] "Penalty" is defined as "(1) the assessment of a penalty, fine, or fee (2) Actual or threatened eviction from a rental unit, or the causing of an actual or threatened eviction from a rental unit." I.C. § 32-31-1-22(b).

The City focuses on several different reasons for its contention that the statute does not apply to the current situation. Asserting that the trial court retroactively applied the statute,[2] the City maintains that it is not trying to enforce an ordinance, rule, or regulation; rather, it is bringing a nuisance action under I.C. § 32-30-6-7 and seeking "compensatory damages for a public nuisance for which it alleges Towne & Terrace is responsible." (Appellant's Br. p. 8).

[12] While we agree with the City that it brought a nuisance action against Towne & Terrace as allowed under I.C. § 32-31-1-22(i), at the same time the City is seeking damages for "resources expended by the City, including but not limited to the Department of Public Safety, IMPD, DCE, and MCHD, in response to the unreasonable volume of investigations, reports, and citations caused by [Towne & Terrace's] neglect of the [] residential complex and individual units," which is seemingly prohibited under I.C. § 32-31-1-22(d).

[13] A court's first task in statutory interpretation is to attempt to harmonize two conflicting statutes. *State v. Universal Outdoor, Inc.*, 880 N.E.2d 1188, 1191 (Ind. 2008). As long as two statutes can be read in harmony with one another, we presume that the Legislature intended for them both to have effect. *Id.* Where

---

[2] Even though the Statute only became effective after incurring the expenses and filing the Amended Complaint, the statute clearly speaks to the situation where a political subdivision, as here, "enforce[s] any ordinance, rule, or regulation that imposes a penalty." I.C. § 32-31-1-22(d).

possible, if conflicting portions of a statute can be reconciled with the remainder of the statute, every word in the statute must be given effect and meaning, with no part being held meaningless. *Id*.

[14] Indiana Code section 32-31-1-22(i) unequivocally allows the pursuit of nuisance actions brought by a city, county or town. Even though this section (i) is silent as to the type of damages a city, county, or town may demand under a nuisance action, section (d) of the statute clarifies that the enforcement of the nuisance rules cannot be used to penalize an individual in requesting law enforcement's assistance. Furthermore, section (i) only limits the type of damages that may be pursued against "a landlord or owner of a rental unit." Here, both parties agreed that Towne & Terrace owns and maintains the common areas of the condominium development but does not own individual units. In return for use of the common areas by the individual units, Town and Terrace imposes assessment and maintenance fees. As such, Towne & Terrace can be considered a landlord for the common areas of the condominium complex. Accordingly, the City's nuisance action against Town and Terrace to refund the City's resources spent on law enforcement's investigations and responses to the residential complex, is barred by I.C. § 32-31-1-22(d).

### III. *The City's Nuisance Action*

[15] In so far as Towne & Terrace cannot be considered a landlord for the common areas or the City's nuisance action encompasses other damages than merely fees

for excessively calling upon law enforcement, we will address the City's nuisance action against Towne & Terrace.

[16] The City contends that the trial court erred in determining that the City could not maintain its nuisance claim based on the allegation that "Towne & Terrace took no reasonable action to prevent the property from descending into criminal chaos, nor did it take any reasonable steps to ameliorate the situation." (Appellant's Br. p. 10). In denying the City's claim, the trial court maintained that:

> Towne & Terrace owns only the common areas of the Towne & Terrace condominium property. Towne & Terrace Corp. owns no lots, individual units or any other property on the site. Towne & Terrace has no direct control over the individual dwellings within the condominium community.
>
> Further, the directors of Towne & Terrace have no police powers, no authorization to enforce laws, and no control over what happens inside a particular residence. The directors have no authority to correct operations, management, or maintenance issues. Only the owners can make such changes and the City did not sue any individual owners in this case.

(Appellant's App. Vol. II, p. 28).

[17] Indiana's nuisance statute allows a county, city, or town to bring an action to "abate or enjoin a nuisance." I.C. § 32-30-6-7. "Nuisance" is described as "Whatever is (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property." I.C. § 32-30-6-6. In interpreting the nuisance statute, our supreme court rejected the contention that a party

must be the owner or controller of property to be held liable for a nuisance. *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1232 (Ind. 2003). Rather, the court held "that there is no requirement that the activity involve an unlawful activity or use of land. If an activity meets the requirements of an unreasonable interference with a public right, it may constitute a public nuisance." *Id.*

[18] Asserting that Towne & Terrace did nothing to increase security and safety at the condominiums and negligently operated the complex, the City alleged in its Amended Complaint that the Towne & Terrace complex is rife with "crimes such as homicide, rape, fraud, arson, domestic battery, public intoxication, child abduction, child abuse, larceny, burglary, armed robbery, aggravated assault, vandalism, intimidation, invasion of privacy, and trespass, necessitating excessive police runs[.]" (Appellant's App. Vol. II, p. 42). As a result, the Towne & Terrace residential complex has encouraged general lawlessness, with the individual units posing a heightened and unreasonable risk of injury and contributing to urban blight.

[19] In its second motion for summary judgment, Towne & Terrace contended that "Towne & Terrace is not capable of controlling crime and is not authorized to enforce criminal laws. Law Enforcement is the sole province of the City[.]" (Appellant's App. Vol. II, p. 161). Towne & Terrace "has no ownership of any of the Lots or dwellings within Towne & Terrace." (Appellant's App. Vol. II, p. 162). To this end, Towne & Terrace designated its Covenants & Restrictions and its Articles of Incorporation, which reflected that Towne & Terrace only

owns the common areas and has no control over the individual units in the complex nor can it compel compliance with existing ordinances from an individual owner. It merely has an obligation to maintain the common areas.

[20] During the hearing on Town & Terrace's motions for summary judgment, the City alleged that the individual residents at the condominium complex caused a misuse and abuse of police and emergency resources by repetitive first responder runs to the complex. However, at no point did the City designate evidence indicating that Towne & Terrace's use or maintenance of the common areas amounted to a nuisance. As "the moving party demonstrated that its designated evidence raised no genuine issues of material fact," Towne & Terrace was entitled to judgment in its favor as a matter of law. *See Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

IV. *Maintenance Assessment Fees*

[21] Lastly, the City maintains that the trial court erroneously issued partial summary judgment to Towne & Terrace on the corporation's counterclaim for maintenance assessment fees.

[22] Article IV of the Towne & Terrace's Declaration of Covenants and Restrictions (Covenants) provides as follows:

> Section 1. Creation of the Lien and Personal Obligation of Assessments. The Declarant of each Lot owned by it within The Properties hereby covenants and each purchaser of any Lot by acceptance of a Deed therefor, whether or not it shall be so expressed in any such deed or other conveyance, shall be deemed

to covenant and agree to pay the Corporation: (1) annual assessments or charges; (2) special assessments for capital improvements, such assessments to be fixed, established and collected from time to time as hereinafter provided. The annual and special assessments, together with such interest thereon and costs of collection thereof as hereinafter provided shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made. Each such assessment, together with such interest thereon and cost of collection thereof as hereinafter provided shall also be the personal obligation of the person who was the Owner of such property at the time when the assessment fell due.

(Appellant's App. Vol. II, pp. 84-85). Relying on the Covenants' language that only the 'purchaser' of a Lot is assessed maintenance fees, the City maintains that "[m]any of the lots owned by the City were not purchased, the deeds came into the City's possession because no one bought the properties at tax sale." (Appellant's Br. p. 13). Claiming to be no more than an "owner of last resort," the City asserts that it is not required to pay maintenance assessments. (Appellant's Br. p. 13).

[23] Absent a definition in the Covenants, we resort to English language dictionaries to ascertain the plain and ordinary meaning of "purchaser." *See Vanderburgh Co. Election Bd. v. Vanderburgh Co. Democratic Cent. Committee*, 833 N.E.2d 508, 510 (Ind. Ct. App. 2005). Black's Law Dictionary defines purchaser as "[o]ne who acquires real property by means other than descent, gift, or inheritance." BLACK'S LAW DICTIONARY (8th ed. 2004). The City is not challenging its current ownership of the individual units; rather, it is contesting the manner in which it acquired these individual condominiums. However, the designated

evidence reflects that its acquisition was not through descent, gift, or inheritance. Instead, the City acquired the individual lots through a tax sale and recorded the deeds to the lots. To exclude this manner of acquisition from the meaning of purchaser for purposes of maintenance assessments would be to elevate form over substance—which we decline to do.

[24] The City now attempts to avoid being assessed for maintenance fees by referring to the Amended Articles of Incorporation, which included, in pertinent part:

> Every person or entity who is a record owner of a fee interest in any Lot which is part of The Properties shall be a member of the corporation, provided that any such person or entity who holds such interest merely as a security for the performance of an obligation shall not be a member. Such membership shall be evidence[d] by a certificate of membership issued by the Corporation Secretary. It shall be the obligation of each member to have the certificate of membership transferred by the Corporation Secretary upon transfer of title to any Lot. Failure to do so will leave the certificate holder liable under all by-laws, rules, and other regulations of the Corporation.

(Appellees' App. Vol. II, p. 149). As it is uncontested that Towne & Terrace failed to issue membership certificates to the City when it acquired the individual rental units, the City contends that the previous owner remains liable for the maintenance assessments. We disagree.

[25] Article IV of the Covenants does not condition the assessment of maintenance charges on the certificate of membership. Rather, each 'purchaser of any lot' at

the time the assessment falls due is subject to annual assessments or charges. Likewise, the Articles of Incorporation fail to include any reference to the Covenants and merely provides guidance as to the internal workings of the corporation. Nothing in the Articles of Incorporation or in the Covenants exempts purchasers of lots from maintenance assessments if the certification of membership is not issued. To the contrary, the Articles of Incorporation purport to safeguard the financial health of Towne & Terrace by increasing the number of parties responsible for the maintenance assessments. In other words, if the previous owner refrains from notifying the corporation of a change in ownership of the rental unit, the previous owner—together with the new purchaser—shall be liable for payment of the annual assessment. Therefore, we conclude that there is no genuine issue of material fact that the City is responsible for the payment of maintenance charges assessed on its rental units in the Towne & Terrace condominium complex.

## CONCLUSIONS

Based on the foregoing, we hold that the trial court properly issued summary judgment on Towne & Terrace's motions for summary judgment.

Affirmed.

May, J. and Mathias, J. concur