

FILED

Apr 16 2019, 10:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Clifford R. Courtney
Indianapolis, Indiana

Frederic C. Sipe
Indianapolis, Indiana

Robert A. Smith
SmithWade, LLC
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

James J. Ammeen, Jr.
Mark J. Liechty
Ammeen Valenzuela Associates, LLP
Indianapolis, Indiana

Deborah L. Law
Donald E. Morgan
Office of Corporation Counsel
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Towne & Terrace Corporation; Glen Timmons, in his capacity as President of the Towne & Terrace Corporation Board of Directors; Darren Kirkland, in his Capacity as a Member of the Towne & Terrace Corporation Board of Directors; Jacqueline Timmons, in her Capacity as a Member of the Towne & Terrace Corporation Board of Directors; and Ella Means, in her Capacity as a Member of the Towne & Terrace Corporation Board of Directors,

*Appellants-Defendants and Counter-Claimants,*

April 16, 2019

Court of Appeals Case No. 18A-OV-2310

Appeal from the Marion Superior Court

The Honorable Cynthia J. Ayers, Judge

Trial Court Cause No. 49D04-1311-OV-42187

v.

City of Indianapolis,

*Appellee-Plaintiff and Counter-Defendant.*

**Najam, Judge.**

# Statement of the Case

Towne & Terrace Corporation; Glen Timmons, in his capacity as President of the Towne & Terrace Corporation Board of Directors; Darren Kirkland, in his Capacity as a Member of the Towne & Terrace Corporation Board of Directors; Jacqueline Timmons, in her Capacity as a Member of the Towne & Terrace Corporation Board of Directors; and Ella Means, in her Capacity as a Member of the Towne & Terrace Corporation Board of Directors (collectively "T&T"),[1] appeal the trial court's order granting an unverified motion filed by the City of Indianapolis ("the City") for the appointment of a receiver over T&T. T&T presents several issues for our review, which we consolidate and restate as whether the trial court abused its discretion when it appointed a receiver to "have control over all of [T&T]'s assets, both real property and the common

---

[1] For ease of discussion, "T&T" will be used to describe the Appellants, collectively, and "Town & Terrace" will be used to describe the physical complex.

areas, real property owned by individual board members, and if found to be unsafe, all other privately-owned properties." Appellants' App. Vol. III at 13.

[2] The City cross-appeals and contends that the trial court abused its discretion when it granted T&T's verified motion to appoint a receiver over the City-owned properties located in the Towne & Terrace complex.

[3] We affirm in part and reverse in part.

## Facts and Procedural History

[4] We set out some of the relevant facts and procedural history in a prior appeal:

> Towne & Terrace is a residential complex near the intersection of East 42nd Street and Post Road in Indianapolis, Indiana. Incorporated in 1964 for the purpose of owning and maintaining the common areas of the condominium development, [T&T] is a private, nonprofit Indiana corporation with volunteer directors. . . . As of 2017, the City owned at least 49[2] units in Towne & Terrace. Thirteen of the units were acquired as part of a settlement in an unrelated nuisance action. The remainder of the units became the City's possession after they were not purchased at tax sales. *Since being acquired, each of the City's homes in Towne & Terrace has been left vacant and boarded up.*
>
> Over the years, the East side of Marion County has suffered a major crime wave. In 2015, the Federal Bureau of Investigation, the United States Attorney's Office, the Indiana State Police, the Marion County Sheriff, and [the] Indianapolis Metropolitan Police Department conducted raids throughout Indianapolis,

---

[2] The City currently owns "between Forty-Nine (49) and Seventy (70) properties" in Towne & Terrace. Appellants' App. Vol. III at 3.

leading to the arrest of thirty-five criminals—the vast majority on the East side.

On December 16, 2014, the City filed an Amended Complaint against [T&T] and four members of its board in their representative capacities, alleging that [T&T] "failed to provide, maintain, and ensure that all common areas of the [] residential complex are safe from hazardous conditions, including but not limited to general lawlessness and the threat of reasonably foreseeable criminal intrusions." Specifically, the City noted that "[s]ince January 1, 2008, there have been at least excessive [sic] police runs and numerous reports filed by the Indianapolis Metropolitan Police Department at the [] residential complex involving crimes such as homicide, rape, fraud, arson, domestic battery, public intoxication, child abduction, child abuse, larceny, burglary, armed robbery, aggravated assault, vandalism, intimidation, invasion of privacy, and trespass." As such, the City requested the trial court, among other things, to

> [a]ward the City compensatory damages against
> [T&T], jointly and severally, to compensate the City
> for all damages caused by [T&T's] operation,
> management and maintenance of the [Towne &
> Terrace] residential complex and individual units,
> including but not limited to:
>
>> i. All resources expended by the City,
>> including but not limited to the
>> Department of Public Safety[ and]
>> IMPD . . . in response to the
>> unreasonable volume of investigations,
>> reports, and citations caused by [T&T's]
>> neglect of the [] residential complex and
>> individual units, and

> ii. Any and all other public resource expenditures resulting from [T&T's] neglect of the [] residential complex.
>
> On January 30, 2015, [T&T] filed an Answer and Counterclaim, denying the allegations in the Amended Complaint and asserting that the City owed [T&T] maintenance fees on the individual units owned by the City. On October 3, 2016, [T&T] moved for summary judgment on its counterclaim against the City.
>
> Prior to the trial court issuing a ruling, [T&T] filed a second motion for summary judgment on the City's Amended Complaint[, and] the City responded on July 17, 2017. After a hearing on [T&T]'s second motion for summary judgment, the trial court issued its ruling on October 18, 2017, granting summary judgment to [T&T] on the City's Amended Complaint and partial summary judgment on [T&T]'s counterclaim.

*City of Indianapolis v. Towne & Terrace Corp.*, 106 N.E.3d 507, 509-10 (Ind. Ct. App. 2018) (citations omitted; emphasis added) ("*Towne & Terrace I*"). On appeal, we affirmed the trial court's grant of summary judgment in favor of T&T on the City's amended complaint, and we affirmed the court's partial summary judgment in favor of T&T on T&T's counterclaim for the payment of maintenance charges assessed against the City. *Id.* at 513, 515.

[5] While the summary judgment motions were pending in the trial court, on September 11, 2017, the City filed a motion for the appointment of a receiver over T&T. In that motion, the City alleged that one of T&T's board members, Walter Timmons, had died the week before, on September 7. And the City stated further as follows:

4. Mr. Timmons and his wife, Jacqueline Timmons, have been the only Directors serving on T&T's Board, and they have served as the only officers for years. Mr. and Mrs. Timmons also are defendants in this civil action with respect to City's claims of breach of fiduciary duty.

5. Under the circumstances, it is impossible for T&T to proceed in this civil action without a functioning Board of Directors and an Officer appointed to appear and act for the corporation. T&T also is in peril of not being able to discharge its obligations to its constituents and the residents living at T&T as a direct and proximate result of Mr. Timmons' untimely death.

6. Should the City prevail on its nuisance claims,[3] it likely will render T&T insolvent or in imminent danger of insolvency such that it will be unable to pay debts as they become due in the ordinary course of business.

7. A meeting of members must be called, notice given, nominations obtained, and an election held to appoint new directors and officers to succeed Mr. Timmons and fill vacancies on the Board. Without a functioning Board of Directors or Officers to direct them, T&T's attorneys are incapable of re[pre]senting the corporation effectively.

8. The immediate appointment of a receiver over T&T is necessary in order to protect City's rights, but not only to protect the City's rights. Most important, appointment of a receiver is necessary to protect the rights of all property owners and to assure the people living at T&T that basic services will be performed. It is necessary to preserve the corporation from failure caused by sudden, unexpected, and un-prepared circumstances that have befallen T&T and the Timmons family.

---

[3] The trial court entered summary judgment in favor of T&T on the City's nuisance claims a few weeks after the City had filed this motion.

Appellants' App. Vol. II at 36.

[6]     On September 26, T&T filed a response stating in relevant part that, following Walter Timmons' death, "the remaining [T&T] board member[s] promptly proceeded to elect two (2) new directors, bringing the total board to three (3) members as required by its By Laws." *Id.* at 41. And on November 20, after the trial court's entry of summary judgment but prior to our opinion on appeal, T&T filed a verified petition for appointment of a receiver alleging that the City had not paid "maintenance fees, assessments, late charges, interest and attorney fees" owed to T&T. *Id.* at 64. The verified petition alleged further:

> 14. That [T&T] is a judgment lien creditor of [the City].
>
> 15. That [I.C. §] 32-30-5-1, et seq. provides for the appointment of a Receiver in an action by a creditor to subject any property or fund to the creditor's claim.
>
> 16. That [T&T] is a creditor of [the City] within the meaning of [I.C. §] 32-30-5-1, et seq., and seeks to subject [the City]'s properties within Towne & Terrace to said lien to recover the amounts due it from the [City].
>
> 17. That [I.C. §] 32-30-5-1 provides for the appointment of a receiver in actions between persons jointly interested in any property or fund.
>
> 18. That [the City] as an owner and [T&T] as a lienholder are jointly interested in the properties within Towne & Terrace owned by [the City] that are subject to the lien of [T&T].

19. Said judgment further holds that the Towne & Terrace properties owned by [the City] are in a state of neglect and deterioration, and said properties have been deteriorating and continue to deteriorate and to be neglected by [the City].

20. That [I.C. §] 32-30-5-1 provides for the appointment of a receiver in actions when it is shown that the property, fund, rent and profits in controversy are in danger of being lost, removed or materially injured.

21. That properties within Towne & Terrace owned by [the City] that are subject to the lien of [T&T] are in danger of being lost, removed or materially injured due to the continuing neglect and deterioration of those properties.

*Id.* at 65-66.

[7] The trial court did not hold a hearing on the cross-motions for the appointment of receivers but considered only the parties' memoranda and a few exhibits.[4] In its memorandum in support of the appointment of a receiver over T&T, the City asserted additional grounds for the appointment, including "T&T's flagrant disregard of the law and its own governing documents." Appellee's App. Vol. II at 61. On September 12, 2018, the trial court granted both motions, and it found and concluded in relevant part as follows:

> On July 3, 2018, the decision of this Court [on summary judgment and partial summary judgment] was affirmed. . . . [T&T] became a judgment lien creditor of the City.

---

[4] The exhibits included affidavits and photographs.

[T&T] estimated that the City owed One Hundred Nine Thousand Eighty Dollars and Zero Cents ($109,080.00) for the years 2012 through 2016 in maintenance fees and assessments. The amount due for 2017 and 2018 to date has not been determined. That issue remains for finalization at trial. After the decision from the appellate court was rendered, the City tendered $109,080.00 to the Marion County Clerk to be held in escrow until a final order from this Court is issued. [T&T] asks the Court to appoint a receiver over all the City's properties.

\* \* \*

I.C.§ 32-30-5-1(2) provides for the appointment of a receiver in actions between persons jointly interested in any property or fund. Both the City and the lienholder [T&T] are jointly interested in the properties within Towne [&] Terrace that are owned by the City.

I.C.§ 32-30-5-1(3) provides for the appointment of a receiver in all actions when it is shown that property, funds, rent, and profits are in danger of being lost, removed, or materially injured. The City's properties are in a state of serious neglect and deterioration. Said properties are continuing to deteriorate and continue to be neglected by the City. The properties within Town [&] Terrace owned by the City are in danger of being lost, removed, or materially injured pursuant to subsection (3). The current condition of City-owned properties, within the community, have made it more difficult for [T&T] to recover the amounts owed to it for assessments and maintenance fees from all current homeowners.

Therefore, the Court finds that [T&T]'s motion has merit. A receiver should be appointed to receive, manage, protect, request demolition of and/or sell, if necessary, all real estate owned by the City, encumbered by said liens of [T&T]. All proceeds from the sale of any properties, approved by the Court, should be held and/or used by the receiver for the benefit of the parties.

Wherefore, the Motion for Appointment of Receiver by [T&T] is hereby Granted.

\* \* \*

**The City's Request for Appointment of Receiver**

\* \* \*

I.C. § 32-30-5-1(5) gives the Court the authority to appoint a receiver when a corporation: (A) has been dissolved; (B) is insolvent; (C) is in imminent danger of insolvency; or (D) has forfeited its corporate rights. The City did not prevail on its nuisance claims in its interlocutory request for relief from this Court's judgment. The City's position that [T&T] was insolvent, or in immediate danger of insolvency based on contingent or unliquidated damages due to a likely assessment of damages drawn from alleged nuisance violations against [T&T], is no longer a valid basis for the appointment of receiver, pursuant to Indiana law.

The City argued that despite [T&T]'s success on appeal on some issues, most of the privately-owned properties at the complex are also in very bad condition. . . .

The City also claimed that [T&T] had not previously demanded that residents, who reside in non-City owned properties, pay their own past due and uncollected maintenance fees and assessments. The City argued that lack of revenue, principally needed to maintain the common areas, had significantly contributed to the overall deterioration of the complex. The City believed that unsafe and deteriorated buildings, frequent squatters, and unrestrained criminal activity at Town [&] Terrace were not solely due to poorly maintained City properties, but that the alarming state of building disrepair, crime, and city ordinance violations are the fault of all property owners at Town [&] Terrace. The City made no specific reference to the Indiana

Unsafe Building Code in its pleadings or brief, but asked the Court to appoint a receiver to deal with the entire state of affairs at Town [&] Terrace including remediation and/or demolition of all privately held properties.

I.C. § 36-7-9-1 provides receivership remedies for rehabilitation of unsafe buildings. This portion of the act applies to actions brought by consolidated cities, counties, and other municipalities that have adopted ordinances for building habitability and building safety under section 3 of this chapter. The City, as a consolidated city and county, acting through its code enforcement division (now BNS),[] satisfies the definition of specific entities that can bring an action of this kind pursuant to I.C. § 36-7-9-1 through the enactment of certain local ordinances. The Court finds that the City's request for a receiver to be appointed, as part of an ordinance violation case, rests within the Indiana Unsafe Building Law.

* * *

The City originally filed this action as an ordinance violation case, which makes I.C. § 36-7-9-4 applicable to the case at bar[.]

* * *

Pursuant to [I.C. § 36-7-9-20], the receiver would be authorized to use management fees and assessments, collected from residents, to repair and restore supervised properties. The receiver may also use monies received from the sale of any parcel of real estate within Town [&] Terrace, for the purposes listed above. . . .

Further, pursuant to I.C. § 32-30-5-1(7), "ample justice to the parties" demands that a receiver be appointed over all property within Towne [&] Terrace. Both the City and [T&T], as home owners, have a responsibility to participate in revitalization

and security of this community. Both the City and [T&T] will be responsible to pay the receivers for services. A public-private partnership must be commenced to rebuild and recreate a safe and thriving [T&T] neighborhood.

In the interim, while the parties argued for the appointment of receivers, the Court ordered a thorough building structure inspection and real estate appraisal of all properties owned by the City. The final reports of those evaluations are not yet due.

The entire complex of buildings in Town [&] Terrace is in a state of disrepair. The neighborhood is rife with crime. Many of the buildings have been abandoned and are vacant. The common areas also need to be upgraded, repaired, and restored. The remaining residents of Towne [&] Terrace live in fear. Deteriorated properties and abandoned real estate have been an inducement and a venue for assaults on law-abiding residents at Towne [&] Terrace such as rape, assault, narcotics activity, arson, armed robbery and homicide. These and other undesirable activities occurring at Towne [&] Terrace give the Court ample authority based on the directives in I.C. § 32-30-5-1(7) and I.C.§ 36-7-9-20, in addition to other local ordinance and code violations, to grant the City's motion for appointment of receiver.

Therefore, the Court finds that the City's Motion for Appointment of Receiver has merit. A receiver should be appointed to receive, manage, protect, request demolition of and/or sell, if necessary, all real estate owned by [T&T], and if found to be unsafe, the real property of other condominium owners. All proceeds from the sale of any properties, approved by the Court, should be held and/or used by the receiver for the benefit of the parties.

The City's Motion for Appointment of Receiver over all properties within Towne and Terrace, including the common areas, is hereby Granted.

Wherefore, the Court having found that both motions are meritorious and should be granted, hereby, enters a Joint Order for Appointment of Receiver for both parties, to wit: the property owned by the City, for all properties owned and managed by [T&T] directors, and for all privately held properties within this complex.

Appellants' App. Vol. III at 3-13. This interlocutory appeal ensued.[5]

## Discussion and Decision

### *T&T's Appeal*

[8] T&T contends that the trial court abused its discretion when it granted the City's motion to appoint a receiver over T&T and properties within Towne & Terrace owned by nonparties. Our scope of review of an interlocutory order appointing a receiver is limited. *Schrenker v. State*, 919 N.E.2d 1188, 1191 (Ind. Ct. App. 2010), *trans. denied*. We will not weigh the evidence on appeal, and we must construe the evidence along with all reasonable inferences in favor of the trial court's decision. *Id.* The appointment of a receiver is in the sound discretion of the trial court, and therefore our standard of review is that of abuse of discretion. *Id.*

[9] Still, the appointment of a receiver is an

"extraordinary and drastic remedy to be exercised with great caution. The action affects one of man's most cherished and sacred rights guaranteed by the United States Constitution—the

---

[5] This is an interlocutory appeal as of right pursuant to Indiana Appellate Rule 14(A)(6).

right to be secure in his property. This right is fundamental to every society in which men are free."

*Id.* at 1191-92 (quoting *Crippin Printing Corp. v. Abel*, 441 N.E.2d 1002, 1005 (Ind. Ct. App. 1982) (internal quotation omitted)).

[10] The appointment of a receiver is a statutorily granted authority that must be strictly construed, and it cannot be sustained unless proper statutory grounds for the appointment are sufficiently shown. *Id.* at 1192. As our Supreme Court has stated, "It is, we think, axiomatic that a receiver should not be appointed if the plaintiff has an adequate remedy at law or by way of temporary injunction." *Ziffrin Truck Lines, Inc. v. Ziffrin*, 242 Ind. 544, 180 N.E.2d 370, 372 (1962).

[11] The trial court appointed a receiver over T&T and the properties owned by nonparties on two separate statutory grounds, namely, the Unsafe Building Law and Indiana Code Section 32-30-5-1(7). T&T contends that the trial court abused its discretion when it appointed a receiver because there is no evidence to support a receivership on either ground. We address each contention in turn.

*Unsafe Building Law*

[12] As we noted in *Towne & Terrace I*, the trial court in its summary judgment order stated that

> [T&T] owns only the common areas of the Towne & Terrace condominium property. [T&T] owns no lots, individual units or any other property on the site. [T&T] has no direct control over the individual dwellings within the condominium community.

Further, the directors of [T&T] have no police powers, no authorization to enforce laws, and no control over what happens inside a particular residence. The directors have no authority to correct operations, management, or maintenance issues. Only the owners can make such changes and the City did not sue any individual owners in this case.

106 N.E.3d at 512 (citation to record omitted).

[13] As a general matter, the Unsafe Building Law ("the UBL") allows municipalities and counties to regulate the use of property in order to protect the public health, safety, and welfare. *Crum v. City of Terre Haute*, 812 N.E.2d 164, 166 (Ind. Ct. App. 2004). Here, because T&T controlled only the common areas of the complex, and there is no evidence that the common areas contained any buildings or structures, the first relevant section of the UBL is Indiana Code Section 36-7-9-4(c) (2018), which provides in relevant part:

For purposes of this chapter, a tract of real property that does not contain a building or structure . . . is considered an unsafe premises if the tract of real property is:

(1) a fire hazard;

(2) a hazard to public health;

(3) a public nuisance; or

(4) dangerous to a person or property because of a violation of a statute or an ordinance.

[14] Indiana Code Section 36-7-9-5 provides that a city's enforcement authority may issue an order requiring action relative to any unsafe premises, and the order must allow at least ten days to accomplish the required action. And Indiana Code Section 36-7-9-7 provides in relevant part that a hearing must be held relative to an order issued under Indiana Code Section 36-7-9-4(c). Only *after* the final date of an order requiring action under Section 36-7-9-5 may a city's enforcement authority initiate a civil action under Section 36-7-9-17, and "a court acting under section 17 of this chapter may appoint a receiver for the unsafe premises," Ind. Code § 36-7-9-20.

[15] On appeal, T&T asserts, and we agree, that the City did not comply with the requirements of the UBL. Indeed, the City did not assert that the UBL was a basis for the appointment of a receiver. It is undisputed that the City, through its enforcement authority, did not issue an order under Section 5 of the UBL requiring T&T to take any action; no hearing was held; and the City did not initiate a civil action under Section 17 of the UBL. Nevertheless, the trial court construed the City's request for a receiver, "as part of an ordinance violation case," to "rest[] within the [UBL]." Appellants' App. Vol. III at 8. The only ordinance violation alleged in the City's amended complaint was for nuisance, and that issue was resolved in T&T's favor on summary judgment. In any event, the trial court did not find that the common areas of Towne & Terrace

are "unsafe premises" as defined by Indiana Code Section 36-7-9-4(c).[6] There is simply no factual basis for the appointment of a receiver over T&T pursuant to the UBL, and we reverse the trial court's appointment of a receiver on that ground.

*Indiana Code Section 32-30-5-1(7)*

[16] The trial court also appointed a receiver over T&T pursuant to Indiana Code Section 32-30-5-1(7), which is Indiana's general receivership statute. That statute provides in relevant part that a receiver may be appointed in cases "as may be provided by law or where, in the discretion of the court, it may be necessary to secure ample justice to the parties." I.C. § 32-30-5-1(7). However, again, "a receiver should not be appointed if the plaintiff has an adequate remedy at law or by way of temporary injunction." *Ziffrin Truck Lines, Inc.*, 180 N.E.2d at 372.

[17] Here, in support of appointing a receiver over T&T under this statute, the trial court stated,

> pursuant to I.C. § 32-30-5-1(7), "ample justice to the parties" demands that a receiver be appointed over all property within Towne [&] Terrace. Both the City and [T&T], as home owners, have a responsibility to participate in revitalization and security of this community. Both the City and [T&T] will be responsible

---

[6] To the extent the City contends that the trial court was authorized to appoint a receiver under Indiana Code Section 36-7-9-20(b), the City does not direct us to any evidence that the common areas of Towne & Terrace are "unsafe premises." And the City's claim that "[r]eliance on the [UBL] was not erroneous" because the trial court anticipated that the City would comply with "the procedures set forth" in the UBL at "a future date" is not well taken. Appellee's Br. at 23.

to pay the receivers for services. A public-private partnership must be commenced to rebuild and recreate a safe and thriving [T&T] neighborhood.

\* \* \*

The entire complex of buildings in Town [&] Terrace is in a state of disrepair. The neighborhood is rife with crime. Many of the buildings have been abandoned and are vacant. *The common areas also need to be upgraded, repaired, and restored.* The remaining residents of Towne [&] Terrace live in fear. Deteriorated properties and abandoned real estate have been an inducement and a venue for assaults on law-abiding residents at Towne [&] Terrace such as rape, assault, narcotics activity, arson, armed robbery and homicide. These and other undesirable activities occurring at Towne [&] Terrace give the Court ample authority based on the directives in I.C. § 32-30-5-1(7) and I.C.§ 36-7-9-20, *in addition to other local ordinance and code violations*, to grant the City's motion for appointment of receiver.

Appellants' App. Vol. III at 12 (emphases added).

[18] The undisputed evidence shows that T&T does not manage or control any buildings or structures in Towne & Terrace. It is also undisputed that *the City's* properties in Towne & Terrace have either been demolished or are vacant and boarded up. The trial court does not cite to any evidence in the record that the common areas managed by T&T are so deteriorated that they contribute to the "undesirable activities" at the complex, and nothing in the record supports a determination that T&T has violated a local ordinance or state statute. *Id.* Indeed, just as we noted in *Towne & Terrace I*, here, "at no point did the City designate evidence indicating that [T&T]'s use or maintenance of the common

areas amounted to a nuisance." 106 N.E.3d at 513. Thus, the evidence does not support the trial court's reasoning for appointing a receiver over T&T.

[19] Still, on appeal, the City maintains that the appointment of a receiver over T&T was warranted because T&T "denied the City its right to vote at the annual Members' meeting in violation of the Indiana Code" and because T&T "refus[ed] to permit inspection of [T&T's] records." Appellee's Br. at 17, 20. But, as shown by its recent petition seeking an injunction against T&T to require T&T to permit the it "to attend, participate in, and vote on all issues" that arise at its annual meeting, which petition is still pending before the trial court, the City has a remedy other than a receivership to resolve these issues. Appellee's App. Vol. V at 2. Accordingly, this alleged ground for the appointment of a receiver is not valid. *See Ziffrin Truck Lines, Inc.*, 180 N.E.2d at 372.

[20] In sum, the power to appoint a receiver should be exercised only in a clear case of extreme necessity. *Schrenker*, 919 N.E.2d at 1192. Here, the only evidence cited by the trial court in support of the appointment of a receiver over T&T is the need for the common areas to be "upgraded, repaired, and restored." Appellants' App. Vol. III at 12. But there is no evidence in the record to show that the condition of the common areas warrants the appointment of a receiver. We reverse the trial court's order appointing a receiver over T&T. Finally, to the extent the trial court's order purports to appoint a receiver over properties owned by nonparties, T&T is correct that the trial court did not have jurisdiction to do that, and we also reverse the court's judgment in that respect

accordingly. *See McCollum v. Malcomson*, 171 Ind. App. 527, 358 N.E.2d 177, 180 (1976) (holding that "where a receiver seeks to acquire property in the possession of a stranger to the litigation, either the complainant therein must first amend the complaint to make the outsider a party or the receiver must proceed against the outsider by ordinary civil action").

### The City's Cross-appeal

On cross-appeal, the City contends that the trial court abused its discretion when it granted T&T's verified motion to appoint a receiver over the City's properties at Towne & Terrace. In particular, the City maintains that the "trial court lacks the power to appoint a receiver over real property owned by a political subdivision"; that there is no evidence to support the appointment of a receiver over the City's properties; and that the appointment of a receiver violates Article 3, Section 1 of the Indiana Constitution. Appellee's Br. at 30. We address each contention in turn.

### Trial Court's Authority

In support of its contention that the trial court "lacks the power to appoint a receiver over real property owned by a political subdivision," the City asserts that "Indiana law does not permit liens on government property." Appellee's Br. at 30, 32. The City appears to suggest that the appointment of a receiver over the properties constitutes an equitable lien and, as such, is prohibited. But the City neither expressly makes that argument nor supports that argument with citation to relevant authority. In sum, the City does not make cogent argument

to support its contention that the trial court lacked authority to appoint a receiver over the properties, and the issue is waived.

*Insufficient Evidence*

[23] The City next contends that the appointment of a receiver over its property "is inappropriate and not supported by the facts at bar." Appellee's Br. at 32. Again, the trial court cited two statutory grounds as support for the appointment of a receiver over the City's properties, namely, Indiana Code Section 32-30-5-1(2) and (3). In particular, the court found in relevant part as follows:

> I.C.§ 32-30-5-1(2) provides for the appointment of a receiver in actions between persons jointly interested in any property or fund. Both the City and the lienholder [T&T] are jointly interested in the properties within Towne [&] Terrace that are owned by the City.
>
> I.C.§ 32-30-5-1(3) provides for the appointment of a receiver in all actions when it is shown that property, funds, rent, and profits are in danger of being lost, removed, or materially injured. The City's properties are in a state of serious neglect and deterioration. Said properties are continuing to deteriorate and continue to be neglected by the City. The properties within Town [&] Terrace owned by the City are in danger of being lost, removed, or materially injured pursuant to subsection (3). The current condition of City-owned properties, within the community, have made it more difficult for [T&T] to recover the amounts owed to it for assessments and maintenance fees from all current homeowners.

Appellants' App. Vol. III at 4-5.

[24] In its brief on appeal, the City asserts that T&T "must show either a clear legal right in itself to a property in controversy, or that it has some lien upon or property right in it, or that it is a fund out of which it may have satisfaction in order to obtain appointment of a receiver." Appellee's Br. at 32 (citing *Rubber Co. v. Duncan*, 86 Ind. App. 218, 155 N.E. 625, 626 (1927)).[7] In essence, the City maintains that, without valid liens over the City's property, T&T cannot show any grounds for the appointment of a receiver. But neither of the two statutory grounds cited by the trial court as support for the appointment of a receiver over the City's properties requires a lien.[8] Thus, the City's argument on this issue misses the mark.

[25] In sum, the City asserts that T&T does not have valid liens on the City's properties and cannot, therefore, seek the appointment of a receiver. Without citation to authority, the City states that the "[a]ppointment of a receiver is an equitable remedy imposed over the property of a debtor to secure payment of its obligations." Appellee's Reply Br. at 6. But the City ignores the relevant statutory grounds for the appointment of a receiver which do not require a lien. And the City does not address the trial court's findings that the City's properties within Towne & Terrace "are in a state of serious neglect and deterioration," "continue to be neglected by the City," and "are in danger of being lost,

---

[7] *Rubber Co.* addresses only one subsection of the relevant statute, namely, the predecessor statute to Indiana Code Section 32-30-5-1(7), which is not relevant to this issue.

[8] Indiana Code Section 32-30-5-1(2) requires a showing that the parties are jointly *interested* in a property, and the City acknowledges that T&T has a security interest in the City's Towne & Terrace properties.

removed, or materially injured pursuant to subsection (3)." Appellants' App. Vol. III at 4. Because the City does not challenge those findings, which support an independent basis for the trial court's order without any reference to liens, the City has waived review of that basis for the appointment of a receiver over its property. We cannot say that the trial court abused its discretion when it appointed a receiver over the City's properties.

## Separation of Powers

[26] Finally, the City contends that the appointment of a receiver over its properties violates the separation of powers doctrine set out in Article 3, Section 1 of the Indiana Constitution. However, we note that the City made no argument under the Indiana Constitution to the trial court, and the issue is waived. *Arnold v. Butts*, 92 N.E.3d 1123, 1127 (Ind. Ct. App. 2018). Waiver notwithstanding, our Supreme Court has held that Article 3, Section 1 "relates solely to the state government and officers charged with duties under one of the separate departments of the state, and not to municipal governments and officers." *Willsey v. Newlon*, 161 Ind. App. 332, 316 N.E.2d 390, 391-92 (1974). Accordingly, the City cannot prevail on this claim.

## Conclusion

[27] The trial court erred when it appointed a receiver over T&T and nonparties, and we reverse the trial court on that issue. The City has not carried its burden on appeal to persuade us that the trial court abused its discretion when it appointed a receiver over the City's properties in Towne & Terrace, and we

affirm the trial court on that issue. In any event, the City has at its disposal the means, other than the appointment of a receiver, to work toward its stated goal of implementing a revitalization plan for Towne & Terrace and the surrounding area, including bringing actions against property owners for ordinance violations, injunctions, and, where warranted, eminent domain.

[28] Affirmed in part and reversed in part.

Baker, J., and Robb, J., concur.