

FILED

Aug 15 2019, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Russell T. Clarke, Jr.
Emswiller, Williams, Noland & Clarke, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
LARRY MARTIN

Kathleen A. DeLaney
Annavieve C. Conklin
DeLaney & DeLaney LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
KEVIN MACKAY

Ryan J. Schoffelmeer
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gino Burelli, <br> *Appellant-Intervenor,* <br><br> v. <br><br> Larry Martin, <br> *Appellee-Plaintiff,* <br><br> and <br><br> Kevin Mackay, <br> *Appellee-Intervenor.* | August 15, 2019 <br><br> Court of Appeals Case No. 19A-MI-136 <br><br> Appeal from the Porter Superior Court <br><br> The Honorable Jeffrey W. Clymer, Judge <br><br> Trial Court Cause No. 64D02-1507-MI-6414 |

**Robb, Judge.**

## Case Summary and Issues

[1] Gino Burelli and Kevin Mackay are currently co-owners of a vintage Corvette worth several million dollars. Larry Martin is a judgment creditor seeking satisfaction of his judgment through the sale of the Corvette. A lengthy attempt to obtain satisfaction of the judgment ultimately resulted in the trial court appointing a receiver at Martin and Mackay's request. The receiver was ordered to take possession of the Corvette and sell it for the highest possible price. The receiver was not required to post a bond but was ordered to insure the Corvette. The trial court denied Burelli's subsequent motion to vacate the receivership order. Burelli appeals the trial court's order denying his motion to vacate and raises several issues for our review. Of those issues, we find the following dispositive: 1) whether the trial court erred in failing to vacate the receivership; and 2) whether the trial court erred by not requiring the receiver to post a bond. We conclude the trial court did not abuse its discretion in ordering and continuing the receivership. However, we also conclude the trial court erred in not requiring the receiver to post a bond as required by statute. Therefore, we affirm in part and reverse and remand in part.

## Facts and Procedural History

[2] The following persons and entities are involved in this litigation:

- 1960 Briggs Cunningham Corvette #1 ("Corvette"), one of three identical cars that, in 1960, were the first Corvettes to compete in the 24

Hours of Le Mans race in France; after going missing for more than thirty years, the Corvette was found in 2012 and an ensuing ownership dispute resulted in a 2015 agreed order out of the United States District Court for the Middle District of Pennsylvania that Gino Burelli and Dominico Idoni together own seventy percent of the Corvette, with Kevin Mackay owning the remaining thirty percent ownership interest; purportedly worth millions of dollars

- Gino Burelli, part owner of the Corvette and owner of several businesses including Harbor Motor Company, Inc., doing business as Harbor Buick GMC, and Top Flight Corvettes, LLC; obtained the full seventy percent interest in the Corvette when Dominco Idoni signed over his interest to Burelli and Top Flight Corvettes, LLC, subject to a lien held by Larry Martin; possessor and insurer of the Corvette at most relevant times

- Dominico Idoni, part owner of the Corvette until he signed his interest over to Burelli and Top Flight Corvettes, LLC during this litigation; indebted to Larry Martin in the amount of $250,600

- Kevin Mackay, Corvette restorer and thirty percent owner of the Corvette

- Larry Martin, obtained a judgment in Maryland for $250,600 plus interest against Idoni in 2009; domesticated the judgment in the Porter Superior Court in July 2015 and obtained a lien against the Corvette to satisfy the debt

- Charles Goldsborough, a broker contracted by Burelli to market and sell the Corvette

- Harbor Motor Company, Inc., doing business as Harbor Buick GMC ("Harbor Buick GMC"), a car dealership owned by Burelli; located in Portage, Porter County, Indiana; the Corvette was stored in a trailer here at most relevant times

- Top Flight Corvettes, LLC ("Top Flight"), another business owned by Burelli; co-owner with Burelli of Idoni's interest in the Corvette

- NextGear Capital, Inc. ("NextGear"), which held certain loan documents executed by Harbor Buick GMC and Top Flight and personally guaranteed by Burelli; filed a complaint for replevin and damages in Hamilton Superior Court during the pendency of this litigation

[3]     The opening salvos in this litigation were described in *Martin v. Burelli*, 18A-MI-25 (Ind. Ct. App. May 29, 2018):

> [Gino] Burelli, Dominico Idoni, and Kevin MacKay [sic] are owners of a rare Briggs Cunningham Corvette that is valued at several million dollars. Burelli and Idoni each owned thirty-five percent of the vehicle, and MacKay [sic] owned the remaining thirty percent. The vehicle is currently located in Indiana.
>
> In June 2009, Martin obtained a judgment in Maryland against Idoni for $250,600 plus ten percent interest per annum. In July 2015, Martin filed a notice of filing a foreign judgment in Indiana and a praecipe for writ of attachment and order for execution of the judgment. Martin alleged that Idoni had a thirty-five percent

ownership interest in the vehicle that was sufficient to satisfy the judgment. The trial court entered a writ of attachment and order for execution of the judgment and ordered the Porter County Sheriff's Department to seize the vehicle.

Burelli filed a motion to intervene in the action, which the trial court granted. Burelli also filed a motion to vacate the writ of attachment and order for execution of judgment. Burelli alleged that he held an insurance policy on the vehicle with Zurich Insurance and that a condition of the policy was that the vehicle remain in Burelli's care, custody, and control. Burelli requested that the vehicle be returned to his possession to avoid cancellation of the insurance policy. Burelli also argued that the vehicle should not be sold because Idoni owned only a minority interest in the vehicle. After a hearing, the trial court ordered that the vehicle be returned to Burelli's care "during the pendency of this action or until further order of the Court." The trial court also found that a lien existed on the vehicle in the amount of Martin's judgment. Finally, the trial court ordered Burelli to provide a report to Martin and the court on January 1, 2016, and quarterly after that date regarding "[g]ood faith efforts to restore, market and sell such vehicle and report of vehicle location." The trial court noted that Martin had the right to apply for further relief if the vehicle was not sold by August 2017. Burelli filed reports in January 2016, April 2016, July 2016, October 2016, January 2017, and May 2017.

On September 18, 2017, Martin filed a verified motion for proceedings supplemental. He alleged that, with interest, he was now owed almost $430,000 and that Idoni had not satisfied the judgment. He also asserted that Burelli had filed late reports, failed to file a July 2017 report, failed to sell the vehicle, and failed to satisfy the lien. Burelli responded by filing a "Verified Motion for Temporary Restraining Order and Permanent Injunction." Burelli asserted in his motion that, in September 2017, Idoni conveyed his interest in the vehicle to Burelli [and

Top Flight] to satisfy a debt of more than $1,376,699 and that Burelli now controlled seventy percent ownership of the vehicle. Martin then filed a petition for contempt and sanctions against Burelli.

At a hearing on the motions [in November 2017], Burelli testified that he had retained [Goldsborough] to sell the vehicle and that he would like until August 2018 to complete a sale.

*Id.* at *1-2 (internal citations omitted). The trial court ruled, in relevant part, that: 1) Burelli should continue to store and insure the Corvette; 2) Martin's motion for proceedings supplemental was denied but his judgment lien was confirmed with interest continuing to accrue; 3) Burelli's motion for a temporary restraining order and permanent injunction was granted in part in that Martin was enjoined from further attempts to take physical possession of the Corvette or have it sold at auction prior to August 7, 2018; 4) Burelli was to use his best efforts to sell the Corvette for the highest possible price before August 7, 2018 and was to file quarterly reports on his efforts; and 5) if the Corvette was sold, the funds would be held in escrow to be disbursed in the following priority: first, to Martin's judgment lien plus interest, then brokerage fees, then amounts due to Mackay, and the remainder to Burelli. Alternatively, Burelli could pay off Martin's judgment at any time. Joint Appendix of Appellees, Volume II at 88-89.[1]

---

[1] Martin appealed the trial court's order granting the relief Burelli sought and no proceedings were had in this case until after the Court of Appeals opinion was certified in July 2018. The Court of Appeals held that the

[4]     Mackay, the owner of the remining thirty percent of the Corvette, was granted leave to intervene in the action. *See* Appellant's Appendix, Volume II at 20-23, 28. A status conference was held on September 21, 2018.[2] Goldsborough testified as to his efforts to sell the Corvette and stated that he "[a]bsolutely" could sell the car, but not until the "dust . . . settle[s] on this . . . . All this litigation and all this drama has got to stop. As long as it's going on, nobody wants this car." Tr., Vol. 2 at 30. Goldsborough also testified that if a reserve is set at an auction, it could negatively affect not just the value of this Corvette but also the values of the other two Briggs Cunningham Corvettes that raced at the 1960 Le Mans: "If it's known that there's a reserve and it doesn't sell, then you've just established what the sellers [feel the] car is worth and it [directly] effects [sic] the other two cars[.]" *Id.* at 29-30. Goldsborough testified that few offers had been made on the Corvette – "some lowball offers" and one offer that included an exchange of real estate and two cars – and all were deemed

---

trial court's order granting the preliminary injunction did not contain sufficiently specific findings to permit appellate review and remanded for the trial court to make specific findings and conclusions explaining why an injunction was necessary. *Id.* at *5. The trial court issued specific findings on September 21, 2018.

[2] At this September 2018 status conference, which appears to be the first proceedings held after the appeal, Martin's counsel noted that "when we had the hearing in November [2017], you gave Mr. Burelli until a date in August [2018] to sell the car. . . . So we want the car sold now." [Transcript of] Bench Hearing, Volume 2 at 14-15. The court replied, "And you appealed the case, at which point I lost jurisdiction. . . . And I'm trying to help you [get the car sold] if you would listen to me." *Id.* Later, the trial court described "what I was thinking when we began[:] . . . I was thinking it has been a long time, three years, whatever. It's been a long time so far. . . . But my thought this morning was that I was going to give Mr. Burelli till the end of the year to sell the car. . . . It didn't dawn on me that there was an appeal that was pending for part of the time" he was previously given. *Id.* at 63-64. Therefore, the trial court gave Burelli additional time to sell the car.

unacceptable. *Id.* at 32. Burelli testified that he would be willing to take the Corvette to the Amelia Island, Florida, auction in March 2019 and asked that he be allowed to continue his efforts to sell the car privately until then. The trial court, wanting "the car to sell for the most money that it can sell for within a reasonable period of time[,]" *id.* at 50, allowed Burelli until March 31, 2019, to sell the Corvette and indicated that if the car was not sold by that date, it would appoint a receiver to sell the car. *Id.* at 63-64.[3]

[5] On November 13, 2018, NextGear filed a Verified Complaint for Replevin, Damages and for Appointment of Receiver in Hamilton Superior Court against, among others, Harbor Buick GMC, Top Flight, and Burelli. The complaint alleged that both Harbor Buick GMC and Top Flight had executed a demand promissory note, loan, and security agreement granting NextGear a security interest in all of their assets and properties wherever located. The complaint further alleged that Burelli had executed an individual guaranty of both notes and was personally liable for over $28,000,000 in damages. NextGear also sought and was granted a temporary restraining order giving NextGear immediate possession and the right to dispose of all collateral pledged by the defendants upon posting a bond.

---

[3] The trial court noted that it would appoint a receiver rather than grant Martin's request for a writ of attachment, and Burelli admitted the appointment of a receiver "is going to probably bring about a more likely positive sale of that vehicle than having the sheriff go pick it up." *Id.* at 66-67.

[6] In response to these events in Hamilton County, Mackay, later joined by Martin, filed an Emergency Motion for Immediate Transfer of Possession of the Corvette, citing several reasons for such relief: the filing of the NextGear action in Hamilton County, the order in the Hamilton County case that NextGear be granted immediate possession of all collateral which might include the Corvette, the alleged sale of the property on which Harbor Buick GMC was situated and where the Corvette had been stored, and the possibility that the insurance on the Corvette was in jeopardy if it was no longer stored at Harbor Buick GMC. Appellant's App., Vol. II at 31-37.[4] After this motion to transfer possession was filed in Porter County, NextGear filed a motion for prejudgment attachment in Hamilton County seeking to attach Burelli's personal automobile collection and specifically referencing the Corvette. Joint App. of Appellees, Vol. II at 106. Hamilton County set a hearing on NextGear's motion for December 28, 2018.

[7] On December 11, 2018, Martin filed a Motion to Appoint Receiver, asserting that appointment of a receiver "would be beneficial, in order to avoid entanglement of the Corvette with the NextGear Replevin Matter." Appellant's App., Vol. II at 133. Martin cited several provisions of Indiana Code section

---

[4] Burelli responded to the Motion for Immediate Transfer of Possession and claimed the allegations about the NextGear litigation were untrue in that he was not indebted to NextGear in the amount of $28,000,000 and the Corvette was not collateral for the NextGear obligation. He acknowledged that he was engaged in negotiations to sell the property on which Harbor Buick GMC operates and had moved all Harbor Buick GMC operations to his dealership in Michigan City, but stated that no sale had been completed, the Corvette remains on the Portage property, and his insurer confirmed that the Corvette would be fully insured if it was moved to the Michigan City facility. *See* Appellant's App., Vol. II at 137-38.

32-30-5-1, the general receivership statute, as grounds for doing so. Also on December 11, the trial court held a hearing on the pending motions. Burelli represented that a forbearance agreement was in the process of being worked out with NextGear and he anticipated that the December 28 hearing in Hamilton County would not happen and NextGear's motion for prejudgment attachment would be withdrawn. At the conclusion of the hearing, the trial court granted the motion to appoint a receiver and issued an order naming a striking panel. The trial court articulated its concern regarding the NextGear litigation: "I think it's in everyone's interest including Mr. Burelli's for me to appoint a receiver now. . . . If there's a receiver that's appointed by this court to take possession of the car . . . then it's going to be a lot harder for Hamilton County to try to come take the car." Tr., Vol. 5 at 35. On December 20, Burelli filed a Motion to Vacate Order Appointing Receiver and/or Second Motion to Correct Error[5] alleging he had entered into a forbearance agreement with NextGear that "puts an immediate stop to the pending litigation and removes any risk of the Hamilton Superior Court issuing any kind of Order relative to the 1960 Corvette[.]" Appellant's App., Vol. II at 171. The motion also alleged NextGear had moved to withdraw its prejudgment attachment motion. "[W]ith the execution of the Forbearance Agreement, and the filing of the motion to withdraw the Pre-Judgment Attachment as it applies to Burelli, the parties in this action are essentially returned to the *status quo* that existed

---

[5] This motion incorporated the terms of a first motion to correct error Burelli filed on December 18.

prior to the filing of the NextGear action in Hamilton Superior Court[.]" *Id.* at 171-72. Accordingly, Burelli asked the receivership order be vacated.

[8] On December 21, the trial court denied Burelli's motion to vacate. Also on that date, the trial court entered its order appointing William Baten as receiver. The order stated the receiver was appointed for the purpose of taking possession of and selling the Corvette at a no reserve auction and then distributing the proceeds of the sale first to Martin's judgment lien including interest, then to any fees, then to any amount due to Mackay, with the remainder to be deposited with the trial court to be held in escrow pending further order of the court. The receiver was not required to post a receiver's bond, "however, the receiver shall not take possession of the Corvette until it is insured by the receiver in the amount of $2.5 million." *Id.* at 18. Baten procured a one-year insurance policy on the Corvette in the amount of $2,500,000 for an annual premium of $8,885.00 and took possession of the Corvette on December 27, 2018.

[9] Burelli filed a notice of appeal on January 15, 2019, appealing the trial court's December 21, 2018 order appointing a receiver and the trial court's denial of his motion to vacate and/or motion to correct error on the same date. This appeal is interlocutory as of right. *See* Ind. Appellate Rule 14(A)(6).

# Discussion and Decision

# I. Appointment of Receiver

Burelli contends the trial court erred by failing to vacate its order appointing a receiver over the Corvette after he submitted evidence that the Corvette was not subject to attachment in the Hamilton County litigation.

The appointment of a receiver is in the sound discretion of the trial court and our review is limited to determining if the trial court has abused that discretion. *Towne & Terrace Corp. v. City of Indianapolis*, 122 N.E.3d 846, 854 (Ind. Ct. App. 2019). We will not reweigh the evidence and we must construe the evidence and all reasonable inferences in favor of the trial court's decision. *Id.* Nonetheless,

> the appointment of a receiver is an extraordinary and drastic remedy to be exercised with great caution. The action affects one of man's most cherished and sacred rights guaranteed by the United States Constitution – the right to be secure in his property. This right is fundamental to every society in which men are free. For these reasons the statute which grants such authority is to be strictly construed.

*Schrenker v. State*, 919 N.E.2d 1188, 1191 (Ind. Ct. App. 2010) (internal citation omitted), *trans. denied*.

Indiana's general receivership statute is found in Indiana Code chapter 32-30-5. Proper statutory grounds for the appointment of a receiver must be sufficiently shown. *Schrenker*, 919 N.E.2d at 1192. A receiver should only be appointed when it is clear that no other remedy exists to effect justice between the parties and prevent a wrong. *Id.* Martin's motion for appointment of a receiver alleged

four statutory grounds for appointing a receiver in this case. Per Indiana Code section 32-30-5-1, a receiver may be appointed:

> (1) In an action by a vendor to vacate a fraudulent purchase of property or by a creditor to subject any property or fund to the creditor's claim. [Martin alleged "Martin is a judgment creditor, and the Corvette is subject to his claim."]

> (2) In actions between partners or persons jointly interested in any property or fund. ["Martin, Burelli, and Mackay are all jointly interested in the Corvette, and the proceeds from its sale."]

> (3) In all actions when it is shown that the property, fund or rent, and profits in controversy are in danger of being lost, removed, or materially injured. ["Based upon the allegations in the NextGear [litigation], the property is in danger of being removed or becoming subject to that lawsuit."]

> * * *

> (7) In other cases as may be provided by law or where, in the discretion of the court, it may be necessary to secure ample justice to the parties. ["[A]ppointment of a receiver is necessary to secure ample justice to all parties."]

Ind. Code § 32-30-5-1(1), (2), (3), and (7); Appellant's App., Vol. II at 133-34, ¶¶ 14-17.

[13] The trial court's written order appointing a receiver does not indicate on which ground the trial court based the appointment, but at the hearing on the motion to appoint receiver, the trial court asked the following questions of the parties:

[Court]: In the receiver statute, 32-[30-5]-1, grounds for appointment; what the statute says is, "A receiver may be appointed by the court in the following cases, subpart one, in an action brought by vendor to vacate a fraudulent purchase of property [or] by a creditor to subject any property or funds to the creditor's claim." Is Martin a creditor?

[Burelli's counsel]: I believe so.

[Martin's counsel]: Yes.

[Court]: So under the receivership act, Martin has grounds. And then under two, in actions between partners or persons jointly interested in a property or fund, then Mackay, as a co-owner, also has the legal right to proceed with a receivership. Is that also correct?

[Martin's counsel]: Correct.

[Burelli's counsel]: Your Honor, I think both of those points are correct. I'm not going to stand here and tell you that with everything swirling around this car, the Court doesn't have a basis to appoint a receiver if you choose to. I think it's discretionary with the court, it's not mandatory, and I think you have to weigh all of the equitable interests in arriving at that decision. But certainly, what you say is absolutely true; there's a basis under the statute for you to move forward with this if that's what you wish to do.

[Court]: Well – and then the third one, the one that actually changed since the NextGear filing is is [sic] that in all actions when there's a showing that the property, fund, or entered profits are in controversy are in danger of being lost, removed, or materially injured. . . . [T]he Hamilton County court should give

full faith and credit to the order of this court regarding priority of liens and ownership interest. But if it doesn't, the car goes poof, the car gets taken down to Hamilton County, and is sold . . . at a deflated price. That doesn't help anybody.

Tr., Vol. 5 at 27-29.

[14] Although Burelli does state in his brief that the trial court erred by appointing a receiver, he conceded at the hearing that the trial court had discretion in this case to do so. Burelli's specific contention on appeal is that the trial court abused its discretion in *continuing* the receivership after he requested the receivership be vacated upon submitting evidence he claimed alleviated the need for a receiver. *See* Appellant's Brief at 11 ("The trial court erred by appointing a receiver because the Corvette *was no longer* subject to pre-judgment attachment in Hamilton County.") (Emphasis added.)

[15] Even if we accept, as Burelli asserts, that the Forbearance Agreement with NextGear means the Corvette is not imperiled by the Hamilton County litigation and subsection (3) no longer applies,[6] the trial court did not appoint a receiver solely because of that litigation. The trial court also noted that both subsections (1) and (2) of the receivership statute were applicable in this case. Neither of those subsections is applicable *because* of the NextGear litigation – they are applicable *in addition to* subsection (3). In fact, both subsections (1) and

---

[6] Burelli did not file the Forbearance Agreement with the court due to confidentiality concerns. *See* Appellant's App., Vol. II at 171.

(2) have been applicable throughout this litigation, as they concern the status of Martin as a judgment creditor with a lien on the Corvette and Mackay as a co-owner.

[16] As this litigation progressed, the trial court expressed its intent to appoint a receiver if Burelli could not sell the Corvette but also indicated its willingness to give Burelli a chance to sell the vehicle himself in order to obtain the greatest possible return for all parties. *See* Tr., Vol. 2 at 64 (trial court stating, "Ultimately, [appointing a receiver is] probably going to end up with a lower purchase price than selling the car which is why I granted the injunction before. I wanted Mr. Burelli to have the opportunity to sell the car."); Tr., Vol. 5 at 30 ("I would like to see the car sold for the most amount possible which benefits Mr. Burelli, Mr. Martin, and Mr. Mackay."). The situation presented greater urgency in December 2018 because of the posture of the NextGear litigation, but the appointment of a receiver was always a possibility even before the NextGear litigation was filed. *See* Tr., Vol. 2 at 64 (trial court indicating at September 2018 hearing that a receiver would be appointed if Burelli did not sell the car before March 31, 2019, and asking the parties if they could come to an agreement "as to who you think the receiver should be"); *see also* Tr., Vol. 5 at 24-25 (Burelli's counsel stating at the December 2018 hearing that there has never been "a legitimate offer from [Burelli's] perspective in the last three and a half years" and acknowledging that it is a difficult car to sell and he cannot say that anything was "going to happen magically" before March 31 to change that). In addition, the evidence Burelli filed to indicate "an immediate stop

[was put] to the pending litigation" in Hamilton County does not indicate that the Hamilton County matter was *resolved*, which is the only thing that would truly stop the NextGear litigation from being a factor. Appellant's App., Vol. II at 171.[7] There is no evidence of the duration or terms of the Forbearance Agreement, and NextGear's withdrawal of its motion for prejudgment interest does not indicate it would or could not refile that motion in the future. The trial court was not obligated to withdraw its order appointing a receiver based on this information.

[17] Based upon subsections (1) and (2) of Indiana Code section 32-30-5-1, the trial court did not abuse its discretion in appointing a receiver to take possession of the Corvette and sell it to satisfy the parties' various interests.[8]

## II. Requirement of a Bond

[18] Burelli also contends the trial court erred by not requiring that the receiver post a bond because such is required by statute. Indiana Code section 32-30-5-3 states that before beginning his or her duties,

---

[7] It appears from the material contained in the Joint Appendix of the Appellees that on December 19, 2018, after the trial court had appointed a receiver and before Burelli filed his motion to vacate that order, Burelli granted a security interest to NextGear "in all of Burelli's right, title, and interest in the Corvette[.]" Joint App. of Appellees, Vol. II at 116. Although Burelli did not grant anything more than what he has, this certainly intertwines NextGear in the current litigation and NextGear has in fact moved to intervene in this action. *Id.* at 112; *see also id.* at 143 (order granting Martin's motion to supplement the Clerk's Record with all pleadings and documents filed with the trial court since February 11, 2019).

[8] Burelli raises the issue of whether he should be allowed an additional ninety-five days (the amount of time between December 21, 2018, when the receiver was appointed, and March 31, 2019, the date by which Burelli had previously been ordered to sell the car) in which to try to sell the Corvette. Because we have held the trial court did not err in appointing a receiver when it did, this issue is moot.

[T]he receiver *must*:

(1) swear to perform the duties of a receiver faithfully; and

(2) with one (1) or more sureties approved by the court or judge, execute a written undertaking, payable to such person as the court or the judge directs, to the effect that the receiver will:

> (A) faithfully discharge the duties of a receiver in the action; and

> (B) obey the orders of the court or judge.

(Emphasis added.) In the order appointing Baten as receiver, the trial court specifically stated the receiver shall "*[n]ot* be required to post a Receiver's bond[;] however, the receiver shall not take possession of the Corvette until it is insured by the receiver in the amount of $2.5 million." Appellant's App., Vol. II at 18.

[19] Burelli contends that, pursuant to Indiana Code section 32-30-5-3, the trial court was required to order the receiver to post a bond. Martin and Mackey contend Burelli waived this argument by not objecting at the trial court to the lack of bond. We do not consider Burelli's argument waived for two reasons: 1) the trial court actually indicated during the December 11, 2018 hearing that it *would* be requiring a bond, *see* Tr., Vol. 5 at 36 ("So there's going to be a bond that's posted that's significant, signed by the receiver, for the receiver to take possession of the car."), and 2) Burelli was not required to raise this issue in either of his motions to correct error, *see* Ind. Trial Rule 59(A) (stating only

newly discovered material evidence and a claim that a jury verdict is excessive or inadequate is required to be presented by a motion to correct error; "[a]ll other issues and grounds for appeal appropriately preserved during trial may be initially addressed in the appellate brief.").[9] And where, as here, and as discussed below, the question is whether a bond is required as a matter of law, we may address that question on appeal whether or not an objection to the lack of bond was raised in the trial court. Accordingly, we will address the merits of Burelli's argument.

[20] Receivers "play a special role as they are an arm of the court." *Keybank Nat'l Ass'n v. Shipley*, 846 N.E.2d 290, 296 (Ind. Ct. App. 2006), *trans. denied*. A receiver must act impartially and is obligated to act in the interests of all interested parties. *Id.* at 295. When a receiver breaches his duty by acting outside his statutory authority or orders of the appointing court or is guilty of negligence and misconduct in administering the receivership, he is personally liable for any loss to any interested party. *Id.* at 296. A receiver must therefore post a bond to secure that obligation.

[21] Although a receiver's bond is similar in purpose to bonds of personal representatives, *State ex rel. Stone v. U.S. Fidelity & Guar. Co.*, 119 Ind.App. 63,

---

[9] Martin cites *In re Guardianship of Posey*, 532 N.E.2d 9, 15 (Ind. Ct. App. 1988), in support of his position that Burelli waived this issue by failing to raise it in his motions to correct error. When *Posey* was decided, a motion to correct error was a prerequisite to appellate review in almost every case and the failure to raise an issue in the motion to correct error resulted in waiver on appeal. *See Walker v. Pillion*, 748 N.E.2d 422, 425 (Ind. Ct. App. 2001). However, Trial Rule 59 was amended in 1989 and a motion to correct error is no longer a condition precedent to an appeal except in the two specific instances named therein. *Id.* at 425-26.

77, 78 N.E.2d 881, 887 (1948), by statute, a personal representative's bond can be waived, *see* Ind. Code § 29-1-11-1 (stating, since 1975, that a personal representative is only required to post a bond where the will mandates it or the court finds it necessary). The receivership statute, however, expressly states the receiver *must* post a bond, and there is no statutory exception.

[22] At the December 2018 hearing, the trial court acknowledged that "the receiver, under the receiver statute . . ., has an obligation to sign an oath and the receiver has an obligation to post a surety as to the value of the car. . . . So Mr. Burelli's interest is going to be protected to the extent of the bond and so are Mr. Mackay['s] and Mr. Martin['s]." Tr., Vol. 5 at 36. And yet the trial court did not order the receiver to post a bond; rather, it ordered the receiver to obtain insurance on the Corvette. However, the two are not interchangeable. The receiver obtained insurance to insure the *receivership property*. But a receiver's bond insures the receiver's *own conduct*. In other words, in the situation currently at hand, if, for instance, a fire destroyed the garage where the Corvette is housed and the Corvette is damaged, insurance would cover the loss and Martin, Mackay, and Burelli could be paid out of the insurance proceeds. If, on the other hand, the receiver sells the Corvette for pennies on the dollar by posting a Craigslist ad rather than taking the Corvette to an established auction as ordered, Martin, Mackay, and Burelli would have no recourse against him because there is no bond securing his oath to proceed as ordered. *Cf. Luxury Townhomes, LLC v. McKinley Props., Inc.*, 992 N.E.2d 810, 812 (Ind. Ct. App. 2013) (receiver appointed to maintain two apartment complexes during

foreclosure action was ordered to obtain or maintain insurance on the properties *and* to secure his oath to faithfully perform his duties by a bond in the amount of $150,000), *trans. denied*.

[23] Indiana Code section 32-30-5-3 requires the receiver's oath to be secured by a bond, and therefore, the trial court erred in failing to require a bond here. We reverse the trial court's order appointing a receiver insofar as it does not require a bond and remand for the trial court to amend its order to require the receiver to post an appropriate bond to secure his oath to faithfully discharge his duties. We express no opinion as to the appropriate amount for the bond.

# Conclusion

[24] The trial court did not abuse its discretion in appointing a receiver or continuing the receivership. However, the trial court did err in failing to require the receiver to post a bond as required by statute. Accordingly, the judgment of the trial court is affirmed in part and reversed and remanded in part.

[25] Affirmed in part; reversed and remanded in part.

Baker, J., and Najam, J., concur.